DANIEL GRUMBINE *vs.* THE STATE OF MARYLAND.

*Ignorance of the Law—-Admissibility of evidence—Turnpike company—Conditional right to Increase tolls.*

Ignorance of the law will not excuse the offender, and consequently evidence of such ignorance is inadmissible.

If the stockholders of a turnpike company accept a charter, coupled with the condition and privilege to increase the tolls, provided they complied with certain pre-requisites, and at a certain time, the company has no right to increase the tolls without first complying with such pre-requisites, and at the time designated.

APPEAL from the Circuit Court for Frederick County.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, STONE, ROBINSON, and IRVING, J., for the appellant, and submitted on brief for the appellee.

*William P. Maulsby, Jr.,* and *John P. Poe,* for the appellant.

*Charles J. M. Gwinn, Attorney-General,* for the appellee.

STONE, J., delivered the opinion of the Court.

The appellant, Grumbine, a toll-gatherer on a turnpike road in Frederick County, was indicted in the Circuit Court for that county for demanding and receiving a greater toll than he was authorized by law to demand and receive.

At the trial two exceptions were taken to the admissibility of evidence, and these two exceptions are the only

matters properly before this Court. There was a de-murrer to the indictment, which was overruled ; but as the appellant did not choose to rest his case upon the de-murrer, but went to trial on the facts, and as no final judg-ment has been entered, and the Attorney-General has not consented to argue the demurrer, it is not properly be-fore us.

Stripped of all its verbiage, the first exception presents only ` the question whether ignorance of the law will excuse the violator. It is hardly necessary for us to say that it does not. The Court below was therefore clearly right in excluding the evidence of such ignorance.

The second exception raises the question whether the turnpike company had the right in 1868 to change the rate of tolls fixed by the charter of the company, and the appellant insists that the company had such a right.

The Act of 1804, chap. 51, the charter of this company, fixed the rate of tolls which the company might demand and receive. This toll sheet so fixed was to be the guide for the company unless changed in the mode prescribed by the Act. The Legislature of that day seems to have supposed that the profits of the road would likely be much greater than experience has shown them to be, and the general intent of the charter was to restrict the clear profits within ten per cent. In no possible contingency were the stockholders to get more than ten per cent. div-idends on their stock, and the rate of tolls fixed in the Act was with that view. The prominent and controlling idea with the Legislature seems to have been to furnish the facilities of travel as cheap as possible to the commu-nities through which the roads passed, consistently with sufficient inducement to capitalists to invest their money in them. To carry out this intention the company was required by the 23rd section, once a year at least, and oftener if required, to lay before the Treasurer of the Western Shore a detailed account of their receipts and

disbursements, and if he, the Treasurer, found that the rate of tolls fixed in the Act had produced, and would likely in the future produce, more than ten per cent. dividend, then *he* was authorized to lower the tolls. By the latter part of the same section he was given the general power to revise the tolls. It will be seen that this section of the Act vests the power over the tolls in the Treasurer of the Western Shore exclusively, and to be exercised by him only upon the information given by the annual statements and reports made to him by the company.

But while it is clear that the company has no power to raise the tolls under section 23, it is claimed by the appellant under section 29. This section provides substantially, that the Treasurer of the Western Shore should lay before the Legislature the accounts of the companies verified by affidavit, &c., and if at *the end of two years after the completion* of the road, it appeared that the average profits from those two years would not yield a dividend of ten per cent., then *the company had the right* to increase the tolls.

Before the company had the right under this section to raise the tolls it was obligatory on them to make their annual reports to the Treasurer, and for the Treasurer to lay them before the Legislature, and when that was done and it appeared that the profits for the two years next succeeding the completion of the road were not equal to ten per cent., then the right to raise the tolls devolved on the company. By the express terms of the Act the two years next succeeding the completion of the road, were made the test of the profits of it. It was not any two years taken either at the pleasure of the company or the State, that were made the standard of productiveness, but those particular two years and no others.

The State offered to the stockholders a charter with the rate of tolls fixed in it, but coupled with the condition and privilege to the stockholders to change the tolls provided

they complied with certain pre-requisites and at a *certain time.* The stockholders accepted the charter with the conditions annexed, and if they neglected to avail themselves of the privilege thus accorded to them, they have no one to blame but themselves. We do not think the Legislature contemplated giving the company a right to raise the tolls, *irrespective of time,* or without taking the preliminary proof required by the Act. It was not a continuing power, but a power to be exercised, if at all, within a fixed period. The remedy for the company is with the Legislature and not with the Courts.

<div align="right">

*Rulings affirmed, and*
<br>
*cause remanded.*