## GEORGE STINSON *et al.*
## *v.*
## THE PEOPLE OF THE STATE OF ILLINOIS.

|   |   |
|---|---|
| 43 | 397 |
| 158 | 662 |
| 43 | 397 |
| 173 | 470 |
| 43 | 397 |
| 177 | 246 |
| 43 | 397 |
| 91a | 5 370 |

1. FORMER DECISIONS. The case of *Welsh* v. *People*, 17 Ill. 339, must be considered as decisive of this case.

2. LARCENY — *voluntary parting with title and possession — a fraud not a felony.* If the owner of goods alleged to have been stolen, voluntarily parts with the possession and title, then, neither the taking nor conversion is felonious. It amounts simply to a fraud.

3. SAME — *what constitutes a felonious appropriation.* But, if he parts with the possession only, expecting the identical thing will be returned, or that it shall be disposed of on his account, or in a particular way as directed or agreed upon for his benefit, then the title to the goods does not pass, and they may be feloniously converted, and the bailee be guilty of a larceny, if obtained with that intent.

4. A, B, C and D, were passengers on a railroad train from Detroit to Chicago. D being a stranger to the others, and while the train was in the State of Indiana, A wagered a certain sum with D, and, thereupon, D deposited the amount of his wager in money with B, who was selected as stakeholder, and A deposited an express package purporting to contain an equal amount, but which was afterward discovered to contain nothing but waste paper, whereupon D demanded his money from B, which he refused to pay back. Subsequently A, B and C were arrested in Chicago, upon a charge of larceny, and the money found in the possession of B. *Held,* that the act was a felony. That the conduct of B fully rebutted the idea, that he acted as a mere innocent stakeholder, but, on the contrary, showed collusion with his confederates in the felonious design to deprive D of his money.

5. SAME — *where the original taking is felonious — when thief may be indicted wherever found.* The principle is well settled, that where the original taking is felonious, every act of possession continued under it by the thief is a felonious taking, wherever the thief may be, and to whatever places he carries the stolen property, and he may be there punished for the felony.

6. Instructions — *what questions to be considered by the jury.* In such case, it was not error for the court to refuse an instruction, that unless the jury believed that the defendants were previously acquainted, and connived together for the purpose of obtaining the money and sharing it between them, they must acquit the defendants. The simple question for the jury is, were the defendants then confederating for the purpose of feloniously obtaining the money, and in what manner was it obtained?

Writ of Error to the Recorder's Court of the city of Chicago; the Hon. Evert Van Buren, Judge, presiding.

This was an indictment for larceny, found against the defendants, George Stinson, Thomas Perkins and W. H. Farmer, in the Recorder's Court of the city of Chicago. A trial was had at the January Term, 1867, and the defendants found guilty, and each sentenced to six years' imprisonment in the penitentiary at hard labor. To reverse which judgment, the case is brought to this court. The further facts in the case necessary to its understanding, are stated in the opinion.

Mr. W. H. H. Russell, for the plaintiffs in error.

Mr. R. G. Ingersoll, Attorney-General, for the people.

Mr. Justice Breese delivered the opinion of the Court:

This case must be governed by the case of *Welsh* v. *The People*, 17 Ill. 339. The alleged larceny in that case, was perpetrated by obtaining possession of the goods by the voluntary act of the owners, under the influence of false pretenses and fraud. The same is this case, and the rule there laid down is: if the owner of the goods, alleged to have been stolen, parts with both the possession and the title to the goods, to the alleged thief, then neither the taking nor the conversion is felonious. It can but amount to a fraud. It is obtaining goods under false pretenses. If, however, the owner parts with the possession voluntarily, but does not part with the title, expecting and intending the same thing shall be returned to him, or that it shall be disposed of on his account, or in a particular way as directed or agreed upon for his benefit, then the goods may be

feloniously converted by the bailee, so as to relate back, and make the taking and conversion a larceny, if the goods were obtained with that intent.

The title to the money put into the hands of Perkins by the prosecutor, did not pass to the stakeholder, or to his confederate, Stinson, with whom the pretended bet was made, for the reason given in Welsh's case. The money of the prosecutor was to be disposed of in a particular way on his account and for his benefit, by staking it against an equal amount of money, alleged to be in the express package, which proved to be nothing more valuable than waste brown paper, though marked on the back and made visible to all, $380.60, thereby implying, that money to that amount was in the package.

Counsel for plaintiffs in error make the point, that, as Seimonds, the prosecuting witness, voluntarily consented and entered into an act for the purpose of gain, and the defendant, Perkins, accepting the money from Seimonds, only as a wager, there could have been no felonious intent on the part of Perkins, he being a mere stakeholder selected by both parties, and unless there was a felonious *intent* on the part of Perkins, there was no larceny.

Here, then, is a distinct admission by plaintiffs in error, if such intent existed, the act was larceny.

We think the intent is very apparent. The evidence shows, as clearly as it can ever be made to show, in a prosecution for stealing by such and kindred contrivances, that the plaintiffs in error were in full fellowship, though traveling, apparently, as strangers, which is an important part in this game, and was very adroitly played by them. To deceive others it was necessary they should appear to be strangers. The fact that Perkins refused to give up the money to the prosecutor, on his discovery that it had been staked against mere waste paper, and his possession of the money in Chicago, where the parties were arrested, fully rebut the idea of his being a mere innocent stakeholder, and establishes the fact, that he was "art and part" with his confederate, in the felonious design. Had he been an innocent stakeholder, and not a confederate, he would have returned to

the prosecutor his money, on discovering he had in his hands only waste paper. This revealed the intent, and made the act a felony. There was no wager in good faith, which Perkins well knew. The whole affair was a device by which the prosecutor should be deprived of his money, and, under the authority of Welsh's case, was a larceny, and should be punished as such.

There is no error in the instructions, as they required the jury to find the whole transaction was concocted in fraud, in order to get possession of the money, before they could convict. They are substantially, in principle, the same as given in Welsh's case, and sustained by this court.

Counsel for plaintiffs in error make this point, that the Recorder's Court of Cook county had no jurisdiction of the offense, the original felonious taking, if such, having occurred in the State of Indiana.

It is answered to this by the attorney general, and correctly, that the principle is well established, where the original taking is felonious, every act of possession continued under it by the thief, is a felonious taking wherever the thief may be; and to whatever place he carries the stolen property, he may be there indicted, convicted and punished for the felony.

This money continued to be the property of the prosecutor. When taken at Lake station, in Indiana, and brought into Chicago, it was still his property, and not only that, but the possession, in legal contemplation, continued in him, and every moment's continuance of the trespass was as much a wrong as the first taking, and may as well come under the allegation "took;" therefore it follows, that these plaintiffs did take, wherever they had the goods. The authorities on this point are conclusive. 1 Hawkin's P. C. 151, § 52; *The People* v. *Burke*, 11 Wend. 129. In this case the goods had been stolen in Canada, and independent of the statute of New York, the court held, that by the common law the offender could be punished in any county where he carries the stolen goods, as he is guilty of stealing them in every place where he has them.

Here the money was brought immediately to Chicago, and found on the person of Perkins, when he was arrested, and the

collusion or confederacy between him and the other plaintiffs was shown. Plaintiffs in error complain, that an instruction they asked of the court was refused. That instruction is as follows: "Unless the jury believe from the evidence, beyond a reasonable doubt, that the defendants were previously acquainted, and that they connived together for the purpose of defrauding the plaintiff out of his money, and with the purpose of dividing, sharing and enjoying it together, that they must acquit the defendants."

This instruction was properly refused. It was wholly immaterial whether the defendants had been previously acquainted, if they were then confederating for the purpose of feloniously obtaining the property of the prosecutor. So, also, it was immaterial whether they designed to procure the money for the purpose of sharing it, or merely for the benefit of one of their number. The true question for the jury was, the manner in which they obtained the money, not the use, as between themselves, which they intended to make of it.

Perceiving no error in the record to the prejudice of the prisoners, the judgment is affirmed.

*Judgment affirmed.*