## GEORGE ARTHUR HAMILTON AND JOHN FRANCIS FLETCHER v. STATE OF MARYLAND

[No. 296, September Term, 1970.]

*Decided May 25, 1971.*

The cause was argued before MORTON, ORTH and MOY-LAN, JJ.

*Carl Harrison Lehmann* for George Arthur Hamilton, one of appellants, and *Hugh L. Reilly* for John Francis Fletcher, other appellant.

*T. Joseph Touhey, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Arthur A. Marshall, Jr., State's Attorney for Prince George's County,* and *E. Allen Shepherd, Jr., Assistant State's Attorney for Prince George's County,* on the brief, for appellee.

MOYLAN, J., delivered the opinion of the Court.

The appellants, George Arthur Hamilton and John Francis Fletcher, were indicted by the Grand Jury for Prince George's County under Indictment No. 8481 for grand larceny. They, along with a co-defendant, Benjamin Ignatius Nichols, were convicted of grand larceny by a jury on January 10, 1969. This Court on November 19, 1969, in *Fletcher, a/k/a Stewart, Nichols and Hamilton v. State,* 8 Md. App. 153, reversed those convictions and remanded the case for a new trial for the reason that the so-called "Allen Charge" had been given to the jury prematurely. The case was retried before a jury, presided over by Judge Samuel J. DeBlasis, on March 2 and 3, 1970. The jury found both appellants, along with the co-defendant Benjamin Ignatius Nichols, guilty of grand larceny. On April 28, 1970, the appellant Fletcher was sentenced to a term of ten years imprisonment. The appellant Hamilton was sentenced to a term of eight years imprisonment. Each appellant has filed a separate appeal.

Between the two appeals, three contentions are raised:

(1) That there was a fatal variance between the indictment charging larceny from an unincorporated business and the proof establishing larceny from a corporation;

(2) That the "continuing larceny" theory of *Worthington v. State,* 58 Md. 403, relied upon by the State in

this case, violated the appellants' right to be free from double jeopardy; and

(3) That the trial judge improperly instructed the jury.

The grand larceny of which the appellants were here convicted arose out of an armed bank robbery perpetrated by these appellants and two others upon the Highland's Branch of the National Capital Bank of Washington on October 22, 1968. The branch was located in the District of Columbia. The armed robbery occurred at approximately 1 p.m. The appellant Fletcher was identified as having participated in that holdup. A red automobile bearing Maryland license tags DY 6318 was identified as leaving the scene shortly after the robbery occurred. Approximately thirty minutes later, as a result of police radio broadcasts, a red automobile bearing Maryland license tags DY 6318 was halted by a police roadblock near Randolph Village in Prince George's County. A number of gunshots were exchanged between the police and the occupants of the automobile. The appellants Hamilton and Fletcher were occupying the automobile at the time it was stopped, along with their co-defendant Nichols. Eighteen thousand dollars was recovered from the vehicle. An additional $19,000 was recovered from the person of the appellant Fletcher.

The victim of the grand larceny was initially named in the indictment as "National Capital Bank of Washington, a body corporate." On January 10, 1969, at the first trial of the appellants, the State's Attorney moved to have the indictment amended by striking out the words "a body corporate." That motion was granted. At the second trial, here being appealed from, the testimony of Paul M. Bennett, the Assistant Vice-President of the National Capital Bank of Washington and the manager of the Highland's Branch thereof, had been that the National Capital Bank of Washington is a corporation operating under the laws of the United States.

At the earlier trial, it had been the testimony of Mr. Bennett which had led to the amendment of the indict-

ment. Upon cross-examination at the second trial, Mr. Bennett explained his testimony at the first trial which had led to whatever confusion resulted:

> "Q. It was obviously your opinion at that time that that was not a corporation, is that correct?
> A. They asked me the question about National Capital Bank of Washington, D. C. Incorporated. That is not our title. That is what it pertained to.
> Q. The question is, 'Is this National Capital Bank of Washington, is this a corporation?' and your answer is, 'No, it's not a corporation.' Do you recall that series of questions and those answers given?
> A. Yes, sir.
> Q. So was it not your opinion at that time that it was not a corporation?
> A. My opinion—that corporation name as we use it, Inc. is not at the end of the name of the bank, sir. That is what I was trying to do.
> Q. So contrary to what was stated it was your opinion at that time that your organization was a corporation?
> A. We pay taxes and everything under a corporation."

The line of cases relied upon by the appellant Fletcher to establish a fatal variance between the *allegata* and the *probata* is not apposite to the situation at bar. In *Richardson v. State,* 221 Md. 85, *Byrd v. State,* 229 Md. 148, and *Stackhouse v. State,* 1 Md. App. 399, the fact of incorporation had been alleged in the indictments and the evidence, though scant, was held to be sufficient to prove the allegation. In *Sippio v. State,* 227 Md. 449, and *Paesch v. State,* 2 Md. App. 746, similar allegations of incorporation had been made in the indictments, but proof to substantiate the allegations was utterly lacking. The common theme running through all of those cases is that "when ownership is claimed to be in a corporation, the

claim must be supported by the evidence." *Richardson v. State, supra,* at 88.

In *State v. King,* 95 Md. 125, at 128, the Court of Appeals explained the requirements for adequately naming a larceny victim:

> "The reason of the rule requiring the allegation of ownership in indictments for this crime is that the Court must be able to determine judicially that the property alleged to have been stolen was the property of another and not the property of the accused, and it is therefore essentially descriptive of the crime charged. A further reason is that the accused is entitled to be informed of the exact accusation against him."

In the case before us, the Vice-President of the victimized bank explained fully that the proper style for the name of his bank in the District of Columbia is "National Capital Bank of Washington," without any suffix whatsoever denoting incorporation. The name given for the victim bank in the amended indictment corresponded precisely to the formal, legal title of that bank, in fact. The name of the victim bank was properly styled. The proof established clearly that the bank was incorporated. The appellant Fletcher was fully apprised of the crime he was called upon to defend. No conceivable question of confusion or double jeopardy could have arisen. He was informed of the exact accusation against him and the proof substantiated that accusation beyond reasonable doubt.

Both appellants question the continuing vitality of the continuing trespass doctrine of *Worthington v. State, supra.* There is no question in this case but that the initial trespassory taking of the money from the bank occurred in the District of Columbia during the course of the armed bank robbery. It is equally clear that as the robbers attempted to make their escape in the getaway car, the trespass continued and that when that getaway car bear-

ing both the robbers and the stolen goods crossed the line between the District of Columbia and the State of Maryland, a fresh caption and asportation occurred within the State of Maryland. The occurrence of a caption and asportation in Maryland, along with the other undisputed elements such as the fact that the stolen cash was the personal property of someone other than the robbers and that the robbers intended permanently to deprive the true owners of that cash, is adequate to spell out the crime of larceny in the State of Maryland.

In *Worthington v. State, supra,* the original theft occurred in West Virginia. The Court of Appeals held that the act of bringing stolen goods into this State constituted a new larceny, for which that person might be indicted and convicted in the courts of this State. It pointed out, at 409, that "at common law, every asportation is a new taking. 1 *Hale's P. C.* 507-508; 1 *Hawkin's P. C.* ch. 19, sec. 52; 2 *East's P. C.* 771-772; 2 *Russell on Crimes,* 327."

This Court, speaking through Chief Judge Murphy, reaffirmed the vitality of the *Worthington* doctrine as recently as in the case of *Gamble v. State,* 2 Md. App. 271, at 274. The doctrine has not only continuing vitality in this State, but is widely recognized. See 2 *Wharton's Criminal Law and Procedure* (Anderson edition) 143; *Clark and Marshall on Crimes* (6th edition) 745; Annotation: "Person who steals property in one state or country and brings it into another as subject to prosecution for larceny in latter.", 156 A.L.R. 862; *United States v. Tolson,* 1 Cranch CC 269; *People v. Staples,* 91 Cal. 23, 27 P. 523; *State v. Cummings,* 33 Conn. 260, 89 Am. Dec. 208; *Stinson v. People,* 43 Ill. 397; *Schultz v. Lainson,* 234 Iowa 606, 13 N.W.2d 326, 156 A.L.R. 858; *Tramwill v. Com.,* 148 Ky. 624, 147 S. W. 36, 42 L.R.A. (n. s.) 207; *Com. v. Parker,* 165 Mass. 526, 43 N. E. 499; *State v. Bouton,* 26 Nev. 34, 62 P. 595; *Territory v. Harrington,* 17 N. M. 62, 121 P. 613; *Hamilton v. State,* 11 Ohio 435; *State v. Johnson,* 2 Or. 115; *State v. McCann,* 167 S. C. 393, 166 S. E. 411; *State v. Underwood,* 49 Me.

181, 77 Am. Dec. 254; *State v. Morrill,* 68 Vt. 60, 33 A. 1070, 54 Am.St.Rep. 870. See also *Lehr v. State,* 2 Md. App. 776.

The appellant Hamilton argues strenuously that although the evidence established an initial trespassory taking in the course of the bank robbery which would have established all of the necessary elements for a larceny if the crime had occurred in Maryland, there was no evidence offered by the State to show that such actions constituted the crime of larceny in the District of Columbia. He ignores Article 35, Section 47, of the *Annotated Code of Maryland,* which provides:

> "Every court of this State shall take judicial notice of the common law and statutes of every state, territory and other jurisdiction of the United States, and of every other jurisdiction having a system of law based on the common law of England."

Pursuant to the command of Article 35, Section 47, it is to be noted that D. C. Code, 1967 Edition, § 22-2201, provides:

> "Whoever shall feloniously take and carry away anything of value of the amount or value of $100 or upward, including things savoring of the realty, shall suffer imprisonment for not less than one nor more than ten years."

That larceny in the District of Columbia is now proscribed by statute rather than by the common law is immaterial to the continuing trespass which occurs when that larcenor crosses the state line into Maryland. See *State v. Cummings,* 33 Conn. 260, wherein a thief who stole goods initially in the District of Columbia and then carried them into Connecticut was held to be guilty of a new larceny in Connecticut.

The appellant Fletcher contends finally that the initial portion of the trial judge's charge to the jury unconstitutionally derogated from the jury's role as "judges of the

law." That section of the charge objected to was as follows:

> "As you know, in every criminal case the jurors are the judges of the law and the facts. Any comment that I may make is not binding upon you and the comments that the attorneys make are not binding upon you. You make the sole determination as to what the evidence is and what the law is in this case.
>
> We do advise you that you shouldn't apply the law as you think it ought to be or what it should be, but what, in fact, it is in this case."

Article XV, Section 5, of the Constitution of Maryland provides that "In the trial of all criminal cases, the Jury shall be the Judges of Law, as well as of fact. . . ." That provision contemplates that it is within the proper province of the jury to resolve conflicting interpretations of the law and to decide whether the law should be applied in dubious factual situations. *Schanker v. State,* 208 Md. 15. It does not confer upon them, however, untrammeled discretion to enact new law or to repeal or ignore clearly existing law as whim, fancy, compassion or malevolence should dictate, even within the limited confines of a single criminal case. That limitation upon the role of the jury as "judges of the law" is implicit in the holdings that questions of constitutionality may not be argued to a jury, *Franklin v. State,* 12 Md. 236, *Bell v. State,* 57 Md. 108, *Hitchcock v. State,* 213 Md. 273, and that questions of the admissibility of testimony and the competency of witnesses will rest within the sole province of the trial judge. *Jules v. State,* 85 Md. 305, *Deibert v. State,* 150 Md. 687; *Kirschgessner v. State,* 174 Md. 195. We hold that the instruction given by the trial judge as to the proper role to be played by the jury was perfectly correct.

*Judgments affirmed.*