# DONALD LEROY THOMAS *v.* STATE OF MARYLAND

[No. 231, September Term, 1975.]

*Decided November 26, 1975.*

46

The cause was argued before MOYLAN, POWERS and LOWE, JJ.

*Robert C. Heeney* and *Joseph M. Quirk, Assigned Public Defenders*, with whom were *Heeney, McAuliffe, Rowan & Abell* on the brief, for appellant.

*Bernard A. Raum, Assistant Attorney General*, with whom were *Francis B. Burch, Attorney General, Andrew L. Sonner, State's Attorney for Montgomery County*, and *William J. Hickey, Jr., Assistant State's Attorney for Montgomery County*, on the brief, for appellee.

MOYLAN, J., delivered the opinion of the Court.

A review of the convictions of the appellant, Donald Leroy Thomas, by a Montgomery County jury, presided over by Judge John F. McAuliffe, for 1) assault with intent to murder and 2) the use of a handgun to perpetrate a felony gives us the opportunity to assess the impact of *Mullaney v. Wilbur*, 421 U. S. 684, 95 S. Ct. 1881, 44 L.Ed.2d 508 (1975), upon a jury instruction dealing exclusively with assault with intent to murder in a case where no actual homicide is involved. As we indicated in Part IIB of *Evans v. State*, 28 Md. App. 640, 349 A. 2d 300, we will not read *Mullaney v. Wilbur* grudgingly and narrowly:

> "Although a very narrow reading of *Mullaney v. Wilbur* could conclude that it dealt only with instructions, in a jury trial, on the subject of the allocation of the burden of proof on the question of 'heat of passion on sudden provocation' in a case where the issue before the jury was whether a

guilty verdict should be for murder or only for manslaughter, such would be a grudging and unduly restrictive reading of this groundbreaking decision. A fairer reading makes it clear that what is involved is the broader question of the allocation of the burden of persuasion where a wrongful allocation of that burden will operate to relieve the State of its obligation under the Due Process Clause, as interpreted by *Winship*, to prove each and every element of a criminal offense beyond a reasonable doubt. This goes beyond the limited defense of mitigation and it goes beyond the limited confines of jury instructions."

### *The Facts in this Case*

At shortly before midnight on June 2, 1975, Gloria Jean Stewart, aged 29, was shot on an adjacent parking lot as she was leaving the American Legion Hall in Rockville. A bullet fractured a rib, damaged the liver and a kidney and fragments of it lodged against her spine. As a result, she is paralyzed from the vicinity of the navel downward. The appellant had known her for approximately ten years, had fathered a child by her, had lived with her some four years earlier and still visited her and her child. He had visited her earlier on June 2. He testified as to having spoken with her earlier that very evening at the American Legion Hall. Gloria Stewart testified that on an occasion approximately one week earlier, the appellant had put a .25 calibre pistol to her head and indicated that he would kill her rather than see her with another man. Gloria Stewart herself testified that as she was approaching two friends on the parking lot, the appellant suddenly stepped out, announced, "I've got your ass now," and fired at her from about twelve feet away as she stared him straight in the face. Gerald Thomas, no relation to the appellant, was one of the friends whom Gloria Stewart was approaching. He testified that he saw the appellant, whom he knew, step out and fire at Gloria Stewart three times and then drive off. The appellant took the stand and flatly denied his criminal agency. He stated

that he left the American Legion Hall well before midnight and went home to bed.

### The Jury Charge

Although for the future, several sentences could well be modified in the light of *Mullaney v. Wilbur,* the charge as a whole passed constitutional muster. It began:

> "Now, in the first count the defendant is charged with assault with intent to murder. The essence or the gist of this offense is the intent to murder, meaning simply, ladies and gentlemen, that if the intent had been carried out and the victim had, in fact, died, the resulting crime would be murder, either murder in the first degree or murder in the second degree. So that in order for there to be a conviction of the crime of assault with intent to murder, *the State must show beyond a reasonable doubt that if that had resulted, it would have been at law either murder in the first degree or murder in the second degree.*
>
> Since that is so, I must briefly explain to you the crime of murder. Murder is the unlawful killing of a human being with malice aforethought. This malice may be either express or implied. The distinguishing characteristic of murder is this concept of malice aforethought. But, ladies and gentlemen, this is a technical expression, and cannot be taken in the ordinary sense of the word 'malice', because as we use it in the law of murder it does not mean necessarily anger or hatred or ill will, but it includes an unlawful or wrongful motive or condition of mind. It means an act done intentionally without legal excuse." (Emphasis supplied)

To be absolutely correct, of course, malice should be more fully defined as "an act done intentionally without legal justification, excuse or mitigation." In the full context of the whole instruction and in the factual posture of this case, it is

clear that nothing hung on the technical precision of this definition. The charge went on:

"So if you have an act done intentionally without legal excuse, you have malice within the meaning of this law; and that would apply to either murder in the first or second degree, and it is not essential for your consideration that I distinguish those.

The other unlawful homicide in this state would be manslaughter, which does not involve the element of malice. But as I have explained to you, in order for there to be assault with intent to murder, if the victim had died it would have to amount to either murder in the first degree or murder in the second degree. So this simply means this, if the victim in this particular case had died, would it have been murder in the first degree or second degree; and, of course, to determine that you have to determine whether assuming there had been a death, that the killing of the human being was unlawful and was with malice aforethought."

The important instruction in this case was that dealing with intent. The gist of this instruction was that an intent to do grievous bodily harm will sustain the conviction just as surely as an intent to kill:

"As I have said, that malice can be either express or implied, and 'malice' means an act done intentionally and without legal excuse.

By the statement that the malice can be either express or implied, we mean this: It would be express malice if there was an actual intent to cause the death of a person killed, or the death of some other person; whereas, malice would be implied when the act is willfully done, and the natural tendency of that act would be to cause death or grievous bodily harm, or when a deadly weapon is used, particularly when it is directed at a vital part of the body.

So when we speak of doing this unlawful act

intentionally, and we speak of express malice, we are talking about the kind of a case where you would find from the evidence that there was an actual intent to cause the death of the person, but it is not necessary that you find that there was a specific intent to cause the death, because implied malice will also suffice for conviction, and 'implied malice' means that the act itself is willfully done, and the natural tendency of that act which is willfully done would be to cause death or grievous bodily harm; and, therefore, the aiming or directing a deadly weapon and discharging it when it is directed at a vital part of the body, the malice may be implied by the intentional doing of such an act.

Let me read to you how that has been expressed in perhaps slightly different and probably more articulate words.

A specific intent to murder is not a necessary element for conviction of assault with intent to murder. It is sufficient if there was an intention to commit grievous bodily harm. The essential distinction between murder and manslaughter is the presence or absence of malice, which is the intentional doing of a wrongful act to another without legal excuse or justification.

The inference of malice may be drawn from the fact of the use of a deadly weapon directed to a vital part of the body."

For two sentences, the instruction then flirts with disaster in a technically inaccurate statement about a presumption of malice. Since the "absence of mitigation" is a given fact, however, it cannot be that aspect of malice to which the presumption refers. Nor will the "intent" element of malice be presumed since the instruction as a whole makes it clear that the State must prove either an intent to kill or an intent to do grievous bodily harm. Nor is the third aspect of malice — the absence of justification or excuse — a remotely material issue in the case. Even though the two sentences

that follow do no harm in this case, it is nonetheless clear that they are meaningless words:

> "The law presumes that in the absence of mitigation all homicides are committed with malice and constitute murder.
>
> This presumption also applies to cases of assault with intent to commit murder."

See *Evans v. State*, Part IIG. The charge goes on:

> "If a person deliberately and without ignorance of fact shoots in the direction of another, it will be presumed that he intended to kill him, and he may be convicted of murder, or assault with intent to murder, depending upon the result."

It would, of course, be preferable and constitutionally safer to say that an intent "may be inferred" rather than "will be presumed." See Part IIF of *Evans v. State*. As Chief Judge Orth pointed out in *Lindsay v. State*, 8 Md. App. 100, 258 A. 2d 760, however, when the Maryland case law uses the word "presumption" in this context, it means merely "presumption of fact" or "inference." Indeed, the very next sentence uses the better term "inference":

> "Intent to kill and premeditation may be inferred from the intentional use of a deadly weapon in a deadly manner."

Premeditation, of course, may not be inferred from the use of the deadly weapon alone but that makes no difference to this case, since non-premeditated malice will support the charge as indisputably as will premeditated malice.

A fair reading of the instruction as a whole simply does not place any burden of persuasion upon the appellant nor relieve the State of its burden of proving every element of the crime beyond a reasonable doubt. *Mullaney v. Wilbur* is not offended.

Even if the instruction failed to pass muster under *Mullaney v. Wilbur*, however, a reversal would not be called for since the evidence did not remotely generate any issue of

justification or excuse, which might render totally non-culpable a resultant homicide, or any issue of mitigation, which might lower a resultant homicide to the manslaughter level and, thereby, fatally erode an assault with intent to murder charge. *Evans v. State*, Part IF and Part IIH.

### Forbidding of Defense Argument on Sentence

The appellant complains that he was denied permission to inform the jury in closing argument of the mandatory five-year sentence, with no possibility of suspension, *State ex rel. Sonner v. Shearin*, 272 Md. 502, 325 A. 2d 573, on the use-of-a-handgun-in-perpetration-of-a-felony case. He candidly acknowledges that his purpose is "jury nullification" of a statute the jury doesn't like. We do not read into the jury function as "judge of law as well as fact" any such broad prerogative. The Maryland law in this respect is as we stated in *Hamilton and Fletcher v. State*, 12 Md. App. 91, 98, 277 A. 2d 460:

> "[Article XV, Section 5] contemplates that it is within the proper province of the jury to resolve conflicting interpretations of the law and to decide whether the law should be applied in dubious factual situations. *Schanker v. State*, 208 Md. 15. It does not confer upon them, however, untrammeled discretion to enact new law or to repeal or ignore clearly existing law as whim, fancy, compassion or malevolence should dictate, even within the limited confines of a single criminal case."

### Legal Sufficiency of Evidence on Handgun Count

The fact that the handgun itself was never recovered and offered in evidence is not fatal to the State's case. Both Gloria Stewart and Gerald Thomas testified that they saw the appellant fire a pistol. That is legally sufficient evidence to send the case to the jury.

### Restriction of Cross-Examination about Prior Record

The court refused to permit the appellant to cross-

examine Gloria Stewart about previous convictions for assault. The reasons given by Judge McAuliffe are an eloquent statement of the prevailing law, which statement we approve and adopt:

> "Well, those are certainly not infamous crimes, and they are certainly not crimes involving moral turpitude. So the question is whether they are crimes which have some tendency to show that the witness is not to be believed under oath. I don't think they are.
>
> They may show a pre-disposition toward violence or offers of violence, but that is about it, and that would not be relevant to the determination in this case.
>
> The Court would not permit inquiry as to this witness concerning conviction for these previous offenses.
>
> I would point out that except as to the last assault and battery, you also run into a time problem with the trespass being three years prior to this, and the other assaults running from 1969, of some five, five and a half years ago, so that even if they were crimes having probative value as to credibility of the witness, you would have time problems with regard to some of them; and I just don't feel that the crime of assault or assault and battery or trespass is such as to indicate a propensity towards lack of credibility; and it has been suggested that we ought not to allow evidence of prior convictions as to defendants at all because the potential prejudicial value is so greatly outweighed by the limited probative value bearing on the issue of credibility. We don't have that problem because we here have a witness, albeit the complaining witness, but, nonetheless, the crimes don't even come close to being those which would tend to show this woman has the lack of candor or truthfulness.

About all you could say is anybody who has been in this much trouble is not truthful, they must be a persistent aggravated violator, and that pretty much runs contrary to the reason that we use these prior offenses.

The fact that one has been involved in prior convictions is not evidence of the fact that they are likely to repeat that kind of conduct. But if it was theft or forgery or false pretenses or breaking with the intent to steal, or attempted larceny, any of these types of crimes involving indication of lack of candor, that may be different, but this is not true of assault and assault and battery. There are some very truthful people who love to get in barroom fights, and I don't think the two of them go together."

The appellant's contention in this regard comes, moreover, with ill grace since he, as a witness, received the same consideration when the State was precluded from cross-examining him about his prior criminal record.

### Exception to the Hearsay Rule

Willard Washington was permitted to testify that just after three shots were fired and as he and Gerald Thomas were crouching behind an automobile to get out of the line of fire, Thomas stated, "I wonder why Donny Boy shot her again." The reasons given by Judge McAuliffe for admitting this as an exception to the Hearsay Rule are an excellent and accurate summary of the law in this sometimes troubled field:

"What the spectator said is admissible if at all only by virtue of the fact that it comes so hard on the heels of a starting of an event made without time to deliberate or concoct some story or refine some version or think of motives to say something, gentlemen, that it has sufficient presumed truthfulness and integrity as to be admissible, is more of a spontaneous declaration or excited

utterance than what is commonly called res gestae. I think the testimony indicates there was some degree of excitement. It is very difficult at midnight for this man to perceive in such a short period of time the entire state of mind of the other man, but certainly this witness is an intelligent person, and he himself was badly frightened by the incident, obviously, and by his own testimony, both he and the declarant ran, not ran but moved quickly to the rear of the car, crouched down, and immediately thereafter the man got in his car and left, and that is when the statement was made, within seconds or a minute.

Under those circumstances I see absolutely no opportunity to mull over the facts and decide what you are going to say.

The statement certainly has the required element of spontaneity. Certainly the incident is sufficiently extraordinary so as to provoke instantaneous comment, which is more of a knee jerk reaction than of any considered deliberation.

We think, therefore, that the inherent reliability of the statement made under those circumstances is very high, and that really is the test for its admissibility, and there is a sufficient showing of excitement by the declarant and true spontaneity as a result of the exciting incident, so I think it is admissible."

The hearsay declaration was, moreover, simply cumulative of the testimony of Gerald Thomas, who subsequently took the stand, and of Gloria Stewart.

### The Denial of the New Trial Motion

At his hearing on the motion for a new trial, the appellant offered a newly discovered witness, whose proffered testimony would go to impeach Gloria Stewart. This proffered testimony was in part contradicted by two State's witnesses. Judge McAuliffe ruled that the proffered

evidence would not probably produce an acquittal and was not more than merely cumulative or impeaching in character. *Jones v. State,* 16 Md. App. 472, 298 A. 2d 483; *Angell v. Just,* 22 Md. App. 43, 321 A. 2d 830. We cannot say that the judge abused his discretion in denying the motion.

*Judgments affirmed.*