## BLACKWELL *v.* STATE OF MARYLAND

[No. 45, September Term, 1976.]

*Decided November 9, 1976.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and ORTH, JJ.

*George E. Burns, Jr., Assistant Public Defender,* and *Alan H. Murrell, Public Defender,* with whom were *Arnold M. Zerwitz* and *Elsbeth L. Bothe, Assistant Public Defenders,* on the brief, for appellant.

*Francis B. Burch, Attorney General,* and *Deborah K. Handel, Assistant Attorney General,* with whom were *Henry R. Lord, Deputy Attorney General, Clarence W. Sharp* and *Bernard A. Raum, Assistant Attorneys General,* on the brief, for appellee.

MURPHY, C. J., delivered the opinion of the Court.

Whether Maryland's death penalty statute violates the Eighth and Fourteenth Amendments to the federal constitution is the principal issue presented in this case.

Anthony Lee Blackwell, Sr., was charged in the Criminal Court of Baltimore in separate indictments with having, on July 17, 1975, "feloniously, wilfully and of deliberately premeditated malice aforethought" murdered six persons, and with having, on the same date, committed arson by burning a designated dwelling house. The State sought the imposition of the death penalty, as authorized by chapter 252 of the Laws of Maryland of 1975, now codified as Maryland Code (1957, 1976 Repl. Vol.), Art. 27, § 413. That statute provides, in subsection (a) that every person convicted of murder in the first degree shall be sentenced to life imprisonment "unless otherwise provided" in subsection (b). Subsection (b) mandates the imposition of the death penalty for first degree murder if (1) the accused actually committed an act which proximately caused the victim's death, (2) the accused was 18 years of age or older at the time the crime was committed, and (3) the murder was committed "under one or more of the following circumstances":

> "(i) The defendant committed the murder at a time when he was confined or under sentence of confinement to any correctional institution in this State;
>
> (ii) The defendant committed the murder in furtherance of an attempt to escape from or evade the lawful custody, arrest, or detention of or by a law-enforcement officer, correctional officer, or guard;

(iii) The victim was a hostage taken or attempted to be taken in the course of a kidnapping or an attempt to kidnap;

(iv) The victim was a child abducted in violation of § 2 of this article;

(v) The defendant committed the murder pursuant to an agreement or contract to commit the murder for pecuniary gain;

(vi) At the time of the murder, the defendant was under a sentence of life imprisonment;

*(vii) The defendant committed more than one offense of murder in the first degree arising out of the same or separate incidents;*

(viii) The defendant committed the murder while committing or attempting to commit robbery." (Emphasis added.)

The murder indictments returned against Blackwell contained averments, required by § 616 (b) of Art. 27 in instances where the death penalty is sought, that each offense came within the provisions of § 413 (b). Specifically, it was charged in each murder indictment that Blackwell was "the person who actually committed an act which proximately cause[d] the victim's death, that at the time of the commission of the act, . . . [he] was eighteen years of age, or older, and that at the time of the murder, the defendant committed more than one offense of murder in the first degree arising out of the same incident."

At Blackwell's trial before a jury, evidence was adduced showing that on the evening of July 16, 1975, he visited the Baltimore City residence of a former girl friend, Jonline Gwynn. Sometime during that evening, Jonline took some money from Blackwell and refused to return it. As a result, Blackwell left Jonline's residence in anger and sought police assistance to recover his money.

At 3 A.M. on July 17, Blackwell returned to Jonline's residence with a police officer and awoke the household. Jonline denied that she had taken any of Blackwell's money;

the officer told Blackwell to leave the house, which he did, saying "I'll be back to burn the bitch down."

Blackwell thereafter obtained a plastic jug full of gasoline and returned to Jonline's residence at 4:20 A.M. He filled three glass bottles with gasoline and into each he stuffed a makeshift wick. He lit the wick of one of the bottles and threw the bottle through the front window of the house; the house caught on fire. Blackwell then lit the wicks of the other two bottles and also threw them into the dwelling. Thirteen people were sleeping in the house at the time of the fire; seven escaped while the remaining six died in the burning house from breathing smoke, soot and carbon monoxide.

Blackwell was apprehended by police a few blocks from the scene of the fire. In a written statement given to the police that same morning, Blackwell admitted that he had set the fire by throwing three "gas bombs" into the dwelling.

Six character witnesses testified on Blackwell's behalf. Each testified that Blackwell was generally regarded as a peaceful, quiet young man with a spotless record as a worker and job corps participant.

Blackwell testified on his own behalf. He said that in starting the fire he intended only to force Jonline out of the home. He admitted knowing that a number of people were in the dwelling when he threw the three "molotov cocktails" through the window, but he denied any intent to harm them.

The jury found Blackwell guilty of six first degree murders and of arson. He was sentenced to death by the court, and to thirty years' imprisonment, to run consecutively, on the arson count.

On appeal, Blackwell challenges the constitutionality of § 413 and of the death penalty imposed upon him under its provisions. He also contends (1) that the court erred in its instructions to the jury, (2) that the court committed reversible error in sustaining an objection to the opening argument of his defense counsel, and (3) that certain of the prosecutor's comments during the State's closing argument were so prejudicial as to deny him a fair trial.

## I.

### *Constitutionality of the Maryland death penalty.*

The Supreme Court of the United States, in six cases decided in July of 1976, considered whether the imposition of the death penalty for the crime of murder constituted cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments to the federal constitution.

The Court upheld the death penalty statutes of Georgia, *Gregg v. Georgia*, 428 U. S. 153, 96 S. Ct. 2909, 49 L.Ed.2d 859; Texas, *Jurek v. Texas*, 428 U. S. 262, 96 S. Ct. 2950, 49 L.Ed.2d 929; and Florida, *Proffitt v. Florida*, 428 U. S. 242, 96 S. Ct. 2960, 49 L.Ed.2d 913. In each of these states, the capital sentencing statutes called for a bifurcated trial procedure, guilt and punishment being separately determined, and for expedited appellate review. Imposition of the death penalty was limited to cases in which certain aggravating circumstances were shown and, most significantly, the sentencing authority was required to consider the existence of mitigating circumstances. Such a requirement, it was held, "guides and focuses the . . . [sentencing authority's] objective consideration of the particularized circumstances of the individual offense and the individual offender before it can impose a sentence of death." *Jurek v. Texas*, 428 U. S. at 274, 96 S. Ct. at 2957, 49 L.Ed.2d at 939.

The Court struck down as unconstitutional the death penalty statutes of North Carolina, *Woodson v. North Carolina*, 428 U. S. 280, 96 S. Ct. 2978, 49 L.Ed.2d 944; Louisiana, *Roberts v. Louisiana*, 428 U. S. 325, 96 S. Ct. 3001, 49 L.Ed.2d 974; and Oklahoma, *Green v. Oklahoma*, mem., 428 U. S. 907, 96 S. Ct. 3216, 49 L.Ed.2d 1214. What was primarily lacking in the statutes of each of these states was ". . . the fundamental respect for humanity underlying the Eighth Amendment, . . . [which] requires consideration of the character and record of the individual offender and the circumstances of the particular offense as a constitutionally indispensable part of the process of inflicting the penalty of death." *Woodson v. North Carolina*, 428 U. S. at 304, 96 S.

Ct. at 2991, 49 L.Ed.2d at 961. Since none of the capital sentencing statutes in these states required particularized consideration of such mitigating circumstances and otherwise failed to provide any "objective standards to guide, regularize, and make rationally reviewable the process for imposing a sentence of death," *Woodson v. North Carolina*, 428 U. S. at 303, 96 S. Ct. at 2991, 49 L.Ed.2d at 960, the statutes were found violative of the Eighth and Fourteenth Amendments to the federal constitution.

As heretofore indicated, the Maryland death penalty statute limits the imposition of the death sentence to eight narrowly drawn categories of first degree murder in cases where the accused actually committed an act which proximately caused the victim's death and where he was at least 18 years of age when the crime was committed. The statute does not provide any other standards whereby the sentencing authority can consider the individual circumstances or characteristics of either the offense or the offender; indeed, all those convicted under the statute are treated alike, without regard to the circumstances. The statute does not provide for a bifurcated trial whereby aggravating and mitigating circumstances can be specially presented, nor does it provide for any special or expedited appellate procedure to review the imposition of the death sentence.[1]

The Attorney General suggests that the "key factor" in a constitutional capital sentencing system is a provision giving the sentencing authority the duty and opportunity objectively to consider aggravating as well as mitigating circumstances "which lead to consideration of both the individual offense as well as the individual offender." He notes, with commendable candor, that while § 413 permits the sentencing authority to focus on the particular nature of the crime, it does not contain "any clear or precise guidelines enabling the sentencing authority to focus [upon] and

---

1. Although the Supreme Court indicated in Gregg v. Georgia, *supra*, that the requirements of a constitutional capital sentencing statute are best met by a bifurcated proceeding, that procedure does not appear to be constitutionally mandated.

consider particularized mitigating factors." In view of these deficiencies, the Attorney General reasons that the death penalty provisions of § 413 are unconstitutional, and we fully agree.

It is true, of course, that § 413 permits elements of mitigation to be presented to the jury, *i.e.*, proof of the defendant's age and of the motive for the act in the context of resolving the question of the proximate cause of the victim's death. We are unable to conclude, however, that the presentation of these two elements requires the sentencing authority to focus on the specific circumstances of the crime and the particular characteristics of the offender to the extent constitutionally required by the controlling Supreme Court decisions. That Blackwell was afforded an opportunity to present, and did present, broad circumstances of mitigation to the jury hardly suffices as the measure of the statute's constitutionality; the jury was neither required nor permitted by the statute to weigh or objectively focus on Blackwell's character and record before returning its verdict and causing the death sentence to be imposed upon him.

Blackwell contends that because he was specifically charged with "capital murder" under § 413 (b) (3) (vii) for having committed more than one offense of murder in the first degree arising out of the same incident, and because § 413 (d) provides that "no other penalty in lieu of the death penalty may be imposed" for convictions under § 413 (b), a holding that the death penalty is unconstitutional necessarily mandates a reversal of his murder convictions. We do not agree. Section 413 does not create a new crime; it is simply a penalty statute for murder in the first degree, which authorizes the imposition of one of two punishments for the offense — life imprisonment or death. Under § 413 (b) and (d), the death sentence is mandated as a separate punishment for common law murder perpetrated in specified circumstances. The unconstitutionality of these provisions affects only Blackwell's death sentences; it does not affect the legality of his underlying murder convictions. *See Moore v. Illinois,* 408 U. S. 786, 92 S. Ct. 2562, 33 L.Ed.2d 706 (1972). Nor does it affect the validity of § 413 (a)

authorizing imposition of a life sentence for those first degree murders not made punishable by death; those provisions are plainly severable from § 413 (b) and (d) under the general severability clause contained in Code, Art. 1, § 23. *See Davidson v. Miller,* 276 Md. 54, 344 A. 2d 422 (1975); *Shell Oil Co. v. Supervisor of Assessments,* 276 Md. 36, 343 A. 2d 521 (1975).

In *Bartholomey v. State,* 267 Md. 175, 297 A. 2d 696 (1972), we considered the constitutionality of a statute, the precursor to present § 413, which authorized imposition of either life imprisonment or death for first degree murder, in the discretion of the sentencing court. We there held, in view of the Supreme Court's decision in *Furman v. Georgia,* 408 U. S. 238, 92 S. Ct. 2726, 33 L.Ed.2d 346 (1972), that the death penalty authorized by the statute was unconstitutional because its imposition was discretionary. We noted that the invalidity of Bartholomey's death sentence did not affect the legality of his murder convictions and we concluded that, in view of the unconstitutionality of the death penalty, the only lawful sentence that could be imposed under the statute was life imprisonment.

We think the rationale of *Bartholomey* is applicable in the present case. It is true that unlike the statute involved in *Bartholomey* — which permitted alternative sentences of life imprisonment or death in the court's discretion — only the death penalty is authorized for capital murder under § 413 (b). The distinction, however, is without controlling significance. The unconstitutionality of § 413 (b) and (d) nullifies the death penalty as a lawful sentence under the statute and requires that Blackwell's death sentences be vacated. Section 413 (a), authorizing life imprisonment for first degree murder, remains intact and viable; and since Blackwell was indicted and convicted for first degree murder, and not for an offense specially created by § 413 (b), to impose a life sentence upon him in lieu of the unconstitutional death sentence is not to sentence him to a penalty for a crime for which he was not convicted. It is thus proper, as it was in *Bartholomey,* to remand to the sentencing court for imposition of the only permissible

sentence under the constitutional provisions of the statute, namely, life imprisonment. *See Furman v. Georgia, supra; Roberts v. Louisiana, supra; Woodson v. North Carolina, supra; Green v. Oklahoma, supra; State v. Rumsey,* S. C., 226 S.E.2d 894 (1976); *State v. Rondeau,* 89 N. M. 408, 553 P. 2d 688 (1976).

## II.

### *Jury Instructions.*

In its instructions to the jury, the court said that there were six "capital murder indictments in this case," that Blackwell was presumed innocent and that the prosecution was required to prove his guilt beyond a reasonable doubt. The court read the substance of the murder indictments to the jury and thereafter said "the law proceeds on what we call a felony murder indictment." The court then advised the jury that murder committed in the perpetration of arson constituted murder in the first degree without regard to proof of wilfulness, deliberation and premeditation. It advised the jury that under Maryland's "capital murder statute," the penalty for committing more than one offense of murder in the first degree arising out of the same incident was death. It advised the jury that if it found beyond a reasonable doubt that Blackwell "killed the victims and that this killing occurred in the course of arson, then you should find the Defendant guilty of murder in the first degree." The court further advised the jury that "if you find that the State has failed to prove beyond a reasonable doubt that the Defendant killed the victims, that this killing was committed in the perpetration of arson, then your verdict must be not guilty."

Blackwell excepted to the court's instructions. He said:

"The Defendant requested that the Court advise the jury about first and second degree common law murder. As well as felony murder. So that the jury would have the prerogative if it saw fit of convicting the Defendant of second degree murder rather than first degree murder. . . ."

Blackwell's exceptions made reference to written jury prayers which he had earlier proffered to the court whereby he sought an instruction that even though it was murder in the first degree if death ensued from the perpetration of an arson, nevertheless it was the jury's prerogative "in your capacity of triers of the law as well as of facts . . . to find that murder committed in the course of an arson is murder in the second degree."

Blackwell contends that the trial judge erred in instructing the jury that it must convict him of capital murder or find him not guilty. He argues that because § 413 is a penalty statute which neither creates a new crime nor alters the common law nature of murder, it was reversible error for the trial judge to refuse to instruct the jury on the lesser included offenses of first and second degree murder. It was the jury's prerogative, he maintains, to determine what type or degree of murder was proved, and that to foreclose such consideration constituted a flagrant violation of due process, particularly since in Maryland the jury has such a wide scope in its role as judge of both the law and the facts.

Code, Art. 27, § 616 sets forth the form of indictments for murder. Subsection (a) deals with general murder indictments where the death penalty is not sought. In first degree murder indictments filed pursuant to this provision, it is well settled that murder in the second degree and manslaughter are lesser included offenses. *State v. Evans*, 278 Md. 197, 362 A. 2d 629 (1976); *Carroll v. Warden*, 205 Md. 631, 106 A. 2d 71 (1954); *Wood v. State*, 191 Md. 658, 62 A. 2d 576 (1948). Section 616 (b) sets forth the form of indictment for first degree murder in cases where the State seeks the imposition of the death penalty; it provides that a murder charge filed pursuant to its provisions "shall be a separate charge and may not be a part of any other count or charge."

The State proceeded against Blackwell, using the form of murder indictment provided by § 616 (b), and the case appears to have been prosecuted by the State on the theory that lesser felonious homicide offenses were not encompassed within the ambit of the indictments. It may have been on this basis that the court instructed the jury to

convict only for first degree murder, for which the death penalty would be mandatory, or find Blackwell not guilty. We need not, however, decide whether lesser homicide offenses were included within the murder indictments filed against Blackwell since, even if they were, he was not entitled in the circumstances of this case to the instructions which he requested.

Maryland Rule 756 b requires the trial judge, at the request of any party, to give advisory instructions to the jury "as may correctly state the applicable law." It is, of course, clear that murder committed in the perpetration of arson is first degree murder. Code, Art. 27, § 408. Consequently, Blackwell was not entitled to an instruction that it was the prerogative of the jury, as judges of law, to find that murder committed in the perpetration of arson was murder in the second degree. Nor was he entitled to an instruction that the jury could properly find that the murders were not committed in the perpetration of an arson. All of the evidence in the case, adduced both by the State and Blackwell, showed that the murders were committed in the course of burning a dwelling house and constituted first degree murder.

Of course, it is incumbent upon the court, when requested in a criminal case, to give an advisory instruction on every essential question or point of law supported by the evidence; the necessity for an instruction depends on the facts in each particular case. *Bruce v. State,* 218 Md. 87, 145 A. 2d 428 (1958). Manifestly, an abstract instruction not applicable to the offense charged in the indictment should not be given, *Midgett v. State,* 216 Md. 26, 139 A. 2d 209 (1958), since instructions on matters of which there is no evidence would be erroneous. The general rule is that where there is no evidence supporting conviction of a lesser degree of homicide, no instructions on lesser offenses should be given. *See* Annot., 21 A.L.R. 603 (1922), 27 A.L.R. 1097 (1923), 102 A.L.R. 1019 (1936), for an exhaustive collection of supporting cases.

Maryland law is generally in accord. *See Chisley v. State,* 202 Md. 87, 95 A. 2d 577 (1953). In that case Chisley was

convicted of first degree murder. The case was submitted to the jury on the basis of first and second degree murder only; Chisley contended that he was entitled to a jury instruction on manslaughter. We held that in the total absence of evidence of provocation or passion, there was no basis upon which a jury could properly arrive at a verdict of manslaughter, and that consequently it was not error for the trial judge to refuse to give an instruction on manslaughter. In *Thomas v. State*, 206 Md. 575, 112 A. 2d 913 (1955), the defendant was charged with robbery and murder, the murder having occurred during the robbery. He admitted to the robbery but complained that the jury was not permitted to take into consideration the elements of malice, deliberation and premeditation. We held that since the commission of the felony was not at issue, and since felonious homicides occurring in the commission of a felony constituted first degree murder, the existence of malice, deliberation and premeditation were not questions for the jury.

That in Maryland the jury is judge of the law as well as of fact does not alter application of the rule. Where, as here, all the evidence adduced at the trial, both by prosecution and defense, established without dispute that the crime was committed in the course of an arson, and thereby constituted first degree murder, the trial judge would not have correctly stated the applicable law to the jury had he granted the requested instructions.

### III.

*Argument of Counsel.*

#### (A)

Blackwell argues that the trial judge improperly sustained an objection to his opening statement, thereby preventing him from outlining applicable principles of law. He began his statement by impressing upon the jury the significance of its task of judging the law. He noted that this was the first Maryland jury in modern times with power to trigger the imposition of a mandatory death sentence, and he

undertook to give a history of capital punishment. The prosecutor's objection came after Blackwell's counsel made the following remarks:

"And it came about that many juries did not see fit to convict a person who was accused of murder, not because they found as a matter of fact that those persons were innocent of the crimes for which they were accused, but because they felt . . . under the circumstances [where] . . . the death penalty was the only one result, that it was wrong and so they acquitted numerous defendants who were charged and who were guilty."

Both the judge and the prosecutor understood this statement as encouragement to the jury to disregard the law. We agree with that assessment. In *Thomas v. State*, 29 Md. App. 45, 349 A. 2d 384 (1975), the defendant candidly admitted that his purpose in wishing to inform the jury of the mandatory sentence for use of a handgun in the perpetration of a felony was to seek a jury nullification of the sentencing provision. Disapproving of that view of the jury function, the court quoted from *Hamilton and Fletcher v. State*, 12 Md. App. 91, 98, 277 A. 2d 460, 464 (1971), *aff'd* 265 Md. 256, 288 A. 2d 885, *cert. denied*, 409 U. S. 1006, 93 S. Ct. 445, 34 L.Ed.2d 298 (1972):

" '[Article XV, Section 5 of the Maryland Constitution] contemplates that it is within the proper province of the jury to resolve conflicting interpretations of the law and to decide whether the law should be applied in dubious factual situations. *Schanker v. State*, 208 Md. 15. It does not confer upon them, however, untrammeled discretion to enact new law or to repeal or ignore clearly existing law as whim, fancy, compassion or malevolence should dictate, even within the limited confines of a single criminal case.' " 29 Md. App. at 52, 349 A. 2d at 389.

We expressly approved these principles in our affirmance of *Hamilton*. It is clear that Blackwell's purpose was similar to

that in *Thomas.* Since such a purpose is improper, objection to the argument was properly sustained. We note, moreover, that the purpose of an opening statement "is to apprise with reasonable succinctness the trier of facts of the questions involved and what the . . . defense expects to prove . . . ." *Wilhelm v. State,* 272 Md. 404, 412, 326 A. 2d 707, 714 (1974). Neither the constitutionality of the law nor the appropriateness of the death penalty for those convicted of offenses falling within the statute was a matter properly before the jury in an opening statement. *See, e.g., Franklin v. State,* 12 Md. 236, 245-46 (1858); *Hitchcock v. State,* 213 Md. 273, 131 A. 2d 714 (1957).

## (B)

Blackwell next challenges two statements made during the prosecutor's rebuttal argument which allegedly misled and prejudiced the jury. In the first, the prosecutor informed the jury that Sirhan Sirhan and Charles Manson, both sentenced to death, were now serving life sentences as a result of appeals. Blackwell claims that as a result of this statement the jury could have misunderstood the significance of its task, believing that any errors would be cured by an appeal. In the second, the prosecutor reminded the jurors that on voir dire each had said that his beliefs on capital punishment would permit a guilty verdict if warranted. The prosecutor then asked the jurors to recall their oaths to decide the case solely on the facts presented and to return a proper verdict. Blackwell contends that this amounted to coercion of the jurors. We hold that neither statement was improper, but if any misunderstanding did occur, the court's instructions cured it.

The prosecutor's first statement must be placed in context to understand its purpose. In closing argument, Blackwell contended that certain celebrated criminals, whom he named, deserved the death penalty but were only serving life sentences. Based on this premise, Blackwell argued that he did not deserve the death penalty. The prosecutor, in rebuttal, was merely responding to this argument. He pointed out that Sirhan and Manson had, in fact, received

the death penalty but were only serving life because of the success of their appeals. His purpose was not to encourage the jury to shirk its duty, as Blackwell contends, but to inform the jurors that, contrary to Blackwell's argument, juries had determined that Sirhan and Manson deserved the death penalty.

Blackwell's reliance on *Shoemaker v. State*, 228 Md. 462, 180 A. 2d 682 (1962), is misplaced. There, in closing argument, the prosecutor commented about the possibility of release on parole even though the jury would have no role in sentencing. We found this remark impermissible since ". . . it suggested to the jury that it might in part shift its responsibility for a finding of the defendant's guilt to some other body." 228 Md. at 469, 180 A. 2d at 685. Here, in rebuttal, the prosecutor only corrected a statement made by Blackwell in closing argument.

The case more closely resembles *James v. State*, 31 Md. App. 666, 358 A. 2d 595, *cert. denied*, 278 Md. 725 (1976). There defense counsel objected to the prosecutor's reference during rebuttal to the suffering of the homicide victim caused by a .25 caliber gun. Defense counsel, in his closing argument, however, had referred to a .25 caliber weapon as "puny" and as a "slingshot." The court found that the prosecutor's rebuttal reference to the gun was merely argument in response. We think the prosecutor was entitled to respond here, also.

The prosecutor's second challenged statement came at the end of his rebuttal argument when he said:

"Ladies and gentlemen of the jury, I don't know any of you, but when you raise your right hand and take an oath I hope that it means something, that it must mean something. I'm going to ask you to remember your oath as jurors to decide the case solely on the facts of the case. . . . All I'm asking you to do is to retire to the jury room with one single steadfast solitary purpose and that is to weigh the evidence. And if the Defendant committed a deliberate arson in which 6 people

died, then you have no choice under all that is right
and all that is just but to return a verdict of guilty."

Petitioner contends that these remarks prejudicially
misstated the jurors' oath, which was to "well and truly
try the case according to the law and the evidence."

Even if the prosecutor's remarks were improper, the
possibility of prejudice was cured by the court's instruction.
*Donnelly v. DeChristoforo*, 416 U. S. 637, 94 S. Ct. 1868, 40
L.Ed.2d 431 (1974); *Wilhelm v. State*, 272 Md. 404, 326 A. 2d
707 (1974). Several times in its jury instructions, the court
informed the jurors that they were the final judges of both
the law and the facts, and we think, in the circumstances,
that this corrected any possible misapprehension derived
from the prosecutor's remarks.

> *As to the murder indictments:
> judgments affirmed except as to
> the sentences of death; death
> sentences vacated; case remanded
> to the Criminal Court of
> Baltimore for imposition of life
> sentences consistent with this
> opinion.*
> *As to the arson indictment:
> judgment affirmed.*