UNITED STATES of America,
Plaintiff-Appellee,

v.

Norman DEMETRACAKIS, Defendant-
Appellant.

No. 14366.

United States Court of Appeals
Seventh Circuit.

July 10, 1964.

Rehearing Denied Aug. 10, 1964.

George D. Crowley and Gerald C. Risner, Chicago, Ill., for appellant.

Edward V. Hanrahan, U. S. Atty. and Arthur L. Dunne, Chicago, Ill., for appellee, John Peter Lulinski and John Powers Crowley, Asst. U. S. Attys., of counsel.

Before DUFFY, SCHNACKENBERG, and KNOCH, Circuit Judges.

KNOCH, Circuit Judge.

Defendant-appellant, Norman Demetracakis, was tried by the United States District Court, jury having been waived, and found guilty of mail theft in violation of Title 18 U.S.C. § 1708. He was sentenced to serve five years on each of two counts, the sentences to run consecutively. He has appealed to this Court asserting that his conviction was based solely on an uncorroborated, involuntary confession, obtained from him while he was illegally confined, which was erroneously received in evidence.

The government contends that as defendant has raised these points for the first time on appeal, he is deemed to have waived them, absent patent error.

 Defendant was represented at his trial by able and experienced Court-appointed counsel who, on offer in evidence of the several exhibits, including the allegedly stolen letters and their enclosures, together with defendant's written statement, made no specific objection to the statement, saying merely:

" * * * I would object for the record and waive any argument on my objection."

We cannot say that the errors of which defendant now complains were made the subject of appropriate objection at the trial, as required. United States v. Jones, 7 Cir., 1953, 204 F.2d 745, 748. United States v. Bender, 7 Cir., 1955, 218 F.2d 869, 874.

Nevertheless we have studied the record to ascertain whether, as defendant contends, patent error exists here. Rule 52(b), Federal Rules of Criminal Procedure.

Defendant was employed as an orderly at the Wrightwood Home, 504 Wrightwood Avenue, Chicago, Illinois, where living quarters were provided for him. His hours were normally 7 p. m. to 7 a. m. He also maintained rooms at 7109 N. Clark Street, Chicago, Illinois.

On May 10, 1963, he worked from about 9 p. m. until about 8 or 9 a. m. the following morning, May 11, 1963, when he was arrested by Chicago Police officers and booked at about 10 or 10:45 a. m. on a state felony charge which was subsequently "no-billed" by the Cook County Grand Jury. During the day he remained at the police station where he was interrogated and exhibited in a line-up in connection with the state felony charge.

After defendant's arrest, Richard Murray, another orderly at the Home, on the direction of Elna Parks, the Home's Assistant Administrator, went to defendant's room to pack his personal possessions.

Mr. Murray testified that when he picked up a coat on defendant's bed, a letter fell out of it. This letter was the government's Exhibit 2. The parties stipulated that if called as a witness, the Secretary of the State of Illinois would testify that on May 9, 1963, he caused to be mailed postage paid, Exhibit 2, addressed to Basil Mihalopoulos, 528 W. Wrightwood Avenue, Chicago. Mr. Murray showed Exhibit 2 to Mrs. Parks who then returned with him and searched defendant's room, where she found two letters and a bank statement. One of these letters was the government's Exhibit 1. The parties also stipulated that if called as a witness, Mrs. Gertrude Coyle would testify that on April 23, 1963, she mailed, postage paid, Exhibit 1 addressed to Mrs. T. Sorcie, 1501 W. Fargo Avenue, Chicago. The parties further stipulated that the addressees of both exhibits would testify that they maintained letter boxes for receipt of mail at their respective addresses, that they examined these boxes the day after the aforesaid mailings, that the letters were not there and that they had not seen them.

Defendant had recently completed a three-year sentence for mail theft. He testified that he had been convicted of nine or ten previous mail theft offenses, spending about twenty-five years in various federal penal institutions.

About 12:45 p. m. on May 11, 1963, Postal Inspector Culkin, who had known defendant for about seven years, was assigned to the case. He visited the Home and received the documents found by Mrs. Parks. He also searched defendant's room at the Home. He then spoke to the defendant at the police station for a few minutes, told him of his Constitutional rights to refrain from speaking and to have counsel, and cautioned him that anything he did say might be used against him. Defendant denied stealing any mail, denied that there was any mail in his room at the Home or elsewhere, and gave permission to search his rooms on Clark Street. After making that search, Inspector Culkin returned to the police station, spoke to defendant for another three to five minutes, during which he told him that the letters had been found in his room, after which de-

fendant made a statement, which was reduced to writing, government's Exhibit 6, in which are set out the location, the persons present, the warnings given defendant of his Constitutional rights, and in which defendant admits stealing four letters, including government's Exhibits 1 and 2, and taking the checks contained in some of these letters, by withdrawing the envelopes from the slots in the respective mail boxes. In his own handwriting, defendant has noted "I have read this; it is true, two pages," before his signature.

At the trial defendant denied the thefts. The Court interrogated him at some length about the statement, Exhibit 6, and the conditions under which it had been given. The defendant made it clear that no threats or promises had been made to induce his confession, or that he had otherwise been abused by either Inspector Culkin or the Chicago Police. He said he was tired at the time, about 3:20 p. m. in the afternoon of May 11, 1963. He had not slept since about 5 p. m. on May 10, 1963. He had walked to work from his Clark Street address. He was having "just a little bit of trouble" "not too serious" with sciatic neuralgia, and had worked all night. He had been questioned throughout most of the day on the state charge. He told the Trial Court that this other charge had him worried, and that he had made a remark to Inspector Culkin, who asked him which matter he would "rather have it over with first," that:

"I would rather get this over with first, because I am pretty sure that the results of this original charge, upon which I was arrested, would show that I was telling the truth, * * * * "

■ No question respecting the voluntary nature of the statement was raised. Defendant did say that it was not true. He now contends that the voluntary nature of the confession was put in issue by his statements concerning his fatigue and his worry about the two charges. We cannot agree. But in any event, we find no basis for holding admission of the confession in evidence to be error.

Unlike the defendant in Culombe v. Connecticut, 367 U.S. 568, 81 S.Ct. 1860, 6 L.Ed.2d 1037 (1961), cited by appellant, this defendant was not an illiterate mental defective, nor a stranger to jails or to the particular postal inspector who interrogated him for about ten minutes in all, after he had been in state custody for less than a day, as contrasted with interrogation of Arthur Culombe for periods of several hours at a time extended over five days. This appellant had been fully advised of his rights. Arthur Culombe was not told he might remain silent. He asked to see an attorney and "[t]hat request was callously turned aside." 367 U.S. 637, 81 S.Ct. 1897, 6 L.Ed.2d 1077–1078.

■ There was no evidence that defendant's will was overborne or that his capacity for self-determination was impaired. As the Supreme Court said in Brown v. Allen, 344 U.S. 443, 476, 73 S.Ct. 397, 417, 97 L.Ed. 469 (1953):

"Mere detention and police examination in private of one in official state custody do not render involuntary the statements or confessions made by the person so detained."

The defendant asserts that Inspector Culkin took advantage of detention, which he characterizes as illegal, to obtain this confession which thereby became inadmissible in evidence. He considers his detention to be illegal because of a delay in taking him before a magistrate. He was arrested May 11, 1963, at about 8:45 or 9 a. m., booked at about 10 a. m., and not arraigned, he states until some time on May 12, 1963. He also complains of Inspector Culkin's failure to bring him before a U. S. Commissioner although he had reasonable grounds for an arrest and told defendant, who denied his guilt three times before confessing, that he was sure of defendant's guilt. Defendant considers that his removal from the cellblock to an office on the second floor of the police station for questioning, in effect, constituted a federal arrest. We

think this is an untenable position. It is clear from the record that defendant was not arrested by the federal officers until the return of a no-bill by the Cook County Grand Jury, on the state charge, whereupon he was remanded to the federal government.

■ Assuming, without deciding, that this question is properly before us, we must hold that there is no showing of illegal detention. The defendant was arrested on the complaint of a woman living at 528 W. Wrightwood Avenue, the same address which appears on government's Exhibit 2, that defendant had molested her five-year-old daughter. Defendant was booked on this charge, which constitutes a felony under the laws of the State of Illinois. Ill.Rev.Stat.1963, Ch. 38, § 11–4.

It is not completely clear from the "half-sheet" record of the state case whether the warrant issued May 11 or May 12, 1963. Again assuming, without deciding, that May 12, 1963, is the correct date, we find that the delay, if any occurred, came after, not before the confession. In view of the nature of the state charge, the time used for threshold investigation seems quite reasonable. People v. Jackson, 1961, 23 Ill.2d 274, 178 N.E.2d 299.

In Anderson v. United States, 1943, 318 U.S. 350, 63 S.Ct. 599, 87 L.Ed. 829, on which appellant relies, the defendants had been detained by the County Sheriff for six days. Confessions were obtained from some of the defendants on the fourth and fifth days of admittedly illegal custody.

Nor can we agree with this defendant that his conviction was based solely on an uncorroborated confession.

It was stipulated, as indicated, that the letters were mailed and not received. Two witnesses testified that the letters were found in defendant's room at the Home. Defendant argues that only his confession evidenced delivery and theft of the letters. However, at the trial, he also testified that on the morning of May 10, 1963, en route from the Home to his rooms on Clark Street, he stopped for about five minutes at 528 Wrightwood, the address on one of the letters, both of which were addressed to locations within walking distance of the Home or of defendant's Clark Street address. He testified further that he was short of funds; he said he went to a restaurant where he was known and was allowed credit because he didn't have enough money to pay for his food.

We have carefully considered all other points raised by defendant-appellant but find them lacking in merit. The judgment of the District Court must be affirmed.

The Court wishes to express its gratitude to Mr. George D. Crowley of the Illinois Bar for his devoted and able efforts as Court-appointed counsel for appellant.

Affirmed.