# GEORGE (NMN) HARRIS, JR. *v.* STATE OF MARYLAND

[No. 925, September Term, 1976.]

*Decided September 8, 1977.*

The cause was argued before GILBERT, C. J., and MORTON and MOORE, JJ.

*Bradford C. Peabody, Assigned Public Defender,* with whom was *Alan H. Murrell, Public Defender,* on the brief, for appellant.

*Leroy Handwerger, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Arthur A. Marshall, Jr., State's Attorney for Prince George's County,* and *Michael Whalen, Assistant State's Attorney for Prince George's County,* on the brief, for appellee.

MORTON, J., delivered the opinion of the Court.

George Harris, Jr., appellant, was convicted by a jury in the Circuit Court for Prince George's County (Loveless, J., presiding) of assault with intent to murder and carrying a dangerous weapon openly with intent to injure. He was sentenced to consecutive prison terms of three and two years, respectively. The sole question presented in this appeal is whether the trial judge erred in admitting into evidence alleged confidential communications between appellant and his wife.

The record shows that on December 17, 1975, David N. P. Smith, a self-employed private detective and commissioned special officer, engaged in a telephone conversation with appellant concerning the triangular relationship of appellant, Smith and appellant's wife, Thelma Joyce Harris. Appellant testified that during the conversation he was threatened by Smith and dared to come to Smith's house to fight. Smith, on the other hand, denied challenging appellant, but rather claims that he told him not to call again.

Later that evening as Smith, wearing his service revolver and in uniform, was leaving his home for work as a night shift security guard, he observed Mrs. Harris's car approach with its headlights off and a shotgun barrel protruding from a rear window. He recognized appellant as the person holding the shotgun and appellant's wife as the driver of the vehicle. The shotgun was fired as the car passed him with several pellets striking him in the left wrist. Smith retaliated by emptying his six-shot service revolver.

Appellant testified that he went to Smith's house only in response to the alleged challenge made by Smith on the telephone earlier that evening. He stated that while he did have a shotgun with him it was not loaded since he intended only to fight Smith physically, not shoot him. Appellant related that upon arrival at Smith's residence he found Smith crouched beside his automobile waiting for him and that Smith opened fire first. According to appellant, it was not until after Mrs. Harris jumped from the car which she

was driving, thereby causing it to roll onto a neighboring lawn, that he loaded his shotgun and returned fire.

Thelma Harris was called to the witness stand by the state. When advised by the trial judge that she could not be compelled against her will to testify against her husband, she stated that she wished to testify. Mrs. Harris stated that she was married to appellant at the time of the shooting but was not living with him and that, in fact, there had been several periods during their marriage when they were separated. She testified that on the date of the shooting appellant came to her house at 7:30 p.m. and engaged in the aforementioned telephone conversation with Smith. The following colloquy ensued at trial:

> "Q. [Assistant State's Attorney] Did there come a
> time that you left your home?
> A. [Mrs. Harris] Yes, there did.
> Q. Under what circumstances?
> A. Threatening."

Defense counsel objected to these questions on the ground that it violated the rule that spouses are incompetent to testify about confidential communications between them. The trial judge overruled appellant's objections and the direct examination of Mrs. Harris continued.

> "Q. Mrs. Harris, when you referred to the fact that
> he threatened you, to whom are you
> referring?
> A. My husband.
> Q. How did he threaten you?
>
> * * *
>
> A. He wanted to know where David lived, and I
> wouldn't tell him, and he threatened to hurt
> me if I didn't, so we left."

Mrs. Harris testified that after appellant procured his shotgun the two of them traveled to Smith's home in her car. "He told me to pull down [in front of Smith's home] and

blow" the horn. She stated that she jumped from the car and immediately thereafter the gun battle ensued.

Appellant contends that by allowing his wife to testify concerning the conversations they had at her apartment and in her car on the drive to Smith's residence the trial judge violated the provision of the Courts and Judicial Proceedings Article, § 9-105: "One spouse is not competent to disclose any confidential communication between the spouses occurring during their marriage." [1]

It would appear that the basis for the statute is the legislative policy which seeks to encourage and maintain marital harmony, confidence, peace and tranquility. *See, e.g.,* McCormick on Evidence 161, 172 (2nd ed. 1972), 97 C.J.S. Witnesses § 266 (1957). This attitude was articulated in *Mercer v. State,* 40 Fla. 216, 24 So. 154, 157 (1898): [2] "Society has a deeply-rooted interest in the preservation of peace of families, and in the maintenance of the sacred institution of marriage; and its strongest safeguard is to preserve with jealous care any violation of those hallowed confidences inherent in, and inseparable from, the marital status."

It is apparent, however, that the statute does not define the scope of what communications are to be considered confidential. Nor does a search of the legislative history of § 9-105 shed any light on this matter. The objective sought to be achieved by the statute has been considered in other jurisdictions and the rule, as presently embodied in § 9-105, has been subjected to substantial modification in many, but not all, courts when the communication sought to be excluded pertains to threats uttered or actual violence inflicted by one spouse against the other. *Compare, e.g., People v. Fields,* 31 N.Y.2d 713, 337 N.Y.S.2d 517, 289 N.E.2d 557 (1972) with *Wheeler v. State,* 220 Tenn. 155, 415 S.W.2d 121 (1967). *See generally* McCormick on Evidence 144-45 (2nd ed. 1972). Moreover, at least one state, California,

---

1. Section 9-105 is not to be confused with § 9-106 which declares that "[t]he spouse of a person on trial for a crime may not be compelled to testify as an adverse witness * * *."

2. Quoted in 25 Md.L.Rev. 324 (1965).

provides, by statute, that "[t]here is no privilege . . . if the communication was made, in whole or in part, to enable or to aid anyone to commit or plan to commit a crime or fraud." West's Ann. Cal. Evid. Code, art. 5 § 981.

There exists a dearth of legal authority in Maryland vis-à-vis these modifications. In *Gutridge v. State*, 236 Md. 514, 517 (1964), the Court of Appeals indicated its approval of relaxing the strict rule rendering spouses incompetent to testify with respect to confidential communications between them when it declared:

> "We may note that some authorities advocate an exception to the privilege, where its invocation would protect acts in furtherance of a crime or fraud. *See McCormick on Evidence*, § 83, p. 171, note 52 Journal of Criminal Law 74, 79, and *Fraser v. United States*, 145 F.2d 139, 143 (6th Cir.). In the Uniform Rules of Evidence, Rule 28 (2) (e), it is provided: 'Neither spouse may claim such privilege * * * if the judge finds that sufficient evidence, aside from the communication, has been introduced to warrant a finding that the communication was made, in whole or in part, to enable or aid anyone to commit or to plan to commit a crime or a tort.' "

Although the Court expressly stated that it was unnecessary for it to decide the issue since it was able to decide the case on other grounds, we nonetheless glean direction from *Gutridge* in the resolution of the present case.

We agree with those courts which hold the spouse/incompetency rule inapplicable when, as here, the confidential communication constitutes a threat or crime against the other spouse. When the communications of one spouse in and of themselves run contrary to the promotion of marital harmony and tranquility, the basis for the statute no longer prevails. Hence, the statute itself is rendered inapplicable in those situations. *See Coleman v. State*, 35 Md. App. 208 (1977).

In this case it was the threat itself which wrought discord to the marriage, not the voluntary in-court disclosure

thereof. Moreover, it is patent that the marital harmony, once damaged by the inter-spouse communication, is not miraculously resurrected by a rule of evidence. Accordingly, we hold that the spouse/incompetency rule does not encompass those communications which, as here, are destructive by themselves of the marital relationship.

*Judgments affirmed; costs to be paid by appellant.*