# RICHARD MILES CHANEY *v.* STATE OF MARYLAND

[No. 662, September Term, 1978.]

*Decided June 7, 1979.*

The cause was argued before MOYLAN, MASON and MACDANIEL, JJ.

*Bradford C. Peabody, Assistant Public Defender,* with whom was *Alan H. Murrell, Public Defender,* on the brief, for appellant.

*Valerie A. Leonhart, Assistant Attorney General,* with whom were *Francis Bill Burch, Attorney General, Naji P. Maloof, State's Attorney for Calvert County,* and *Gerald K. Anders, Assistant State's Attorney for Calvert County,* on the brief, for appellee.

MOYLAN, J., delivered the opinion of the Court.

A criminal justice system, by its very nature, frequently involves the delicate balancing of competing interests. A

society dedicated to human liberty must be ever vigilant that a suspect never be compelled to incriminate himself. That same society, legitimately concerned with protecting itself from its predators, must also be sensitive to the value of an admission or confession, properly obtained, as sometimes indispensable evidence of guilt. But for the confession in the case at bar, a brutal sexual assault and strangulation of a ten-year-old girl might have gone forever unredressed.

On December 6, 1971, ten-year-old Elizabeth Ann Metzler failed to return from school to her home in northern Anne Arundel County. On the next day, her lifeless body was found in the woods several miles from home. She had been sexually molested and strangled. Although suspicion centered on the appellant, Richard Miles Chaney, the evidence of guilt was not sufficient to bring charges. Instead of relegating this senseless murder to the dustbin of "unsolved crimes," the Anne Arundel County police bided their time and with patient diligence maintained the investigation. It ultimately bore fruit with the indictment of the appellant 5 ½ years later. The appellant, following a removal, was ultimately found guilty by a Calvert County jury, presided over by Judge Perry G. Bowen, Jr., of murder in the first degree. Although bits and pieces of the case for the State were put together from a variety of sources over the course of the years, the capstone was the appellant's confession. The prime thrust of this appeal is his challenge to its admissibility.

The appellant does not maintain that the interrogation leading to his confession offended traditional voluntariness standards in contravention of the Fifth and Fourteenth Amendments. *Rogers v. Richmond,* 365 U. S. 534, 81 S. Ct. 735, 5 L.Ed.2d 760 (1961); *Culombe v. Connecticut,* 367 U. S. 568, 81 S. Ct. 1860, 6 L.Ed.2d 1037 (1961); *Jackson v. Denno,* 378 U. S. 368, 84 S. Ct. 1774, 12 L.Ed.2d 908 (1964). Nor does he contend that there was a violation of the judicially created prophylactic rules suggested by the Supreme Court to implement the underlying constitutional protection. *Miranda v. Arizona,* 384 U. S. 436, 86 S. Ct. 1602, 16 L.Ed.2d 694 (1966). He does, however, urge most strenuously a violation of Maryland District Rule 723 a as interpreted by *Wade Iglehart*

*Johnson v. State,* 282 Md. 314, 384 A. 2d 709 (1978). As we address that issue, we note at the outset that we are not here dealing with the question of whether Rule 723 a and *Johnson v. State* were *satisfied,* but with the very distinct question of whether Rule 723 a and *Johnson v. State* were *applicable.*

Maryland District Rule 723 a then [1] provided:

> "A defendant who is detained pursuant to an arrest shall be taken before a judicial officer without unnecessary delay and in no event later than the earlier of (1) 24 hours after arrest or (2) the first session of court after the defendant's arrest upon a warrant or, where an arrest has been made without a warrant, the first session of court after the charging document is filed. A charging document shall be filed promptly after arrest if not already filed."

In implementing Rule 723 a, *Johnson v. State* held explicitly at 282 Md. 328-329:

> "We therefore hold that any statement, voluntary or otherwise, obtained from an arrestee during a period of unnecessary delay in producing him before a judicial officer, thereby violating M.D.R. 723 a, is subject to exclusion when offered into evidence against the defendant as part of the prosecution's case-in-chief. A statement is automatically excludible if, at the time it was obtained from the defendant, he had not been produced before a commissioner for his initial appearance within the earlier of 24 hours after arrest or the first session of court following arrest, irrespective of the reason for the delay."

Before returning to *Johnson v. State,* a brief detour will be appropriate to recite the circumstances surrounding the taking of the confession in this case. Detectives Gordon March and Thomas Mock, of the homicide unit of the Anne

---

1. On July 1, 1979, reference to the first court session after arrest was deleted.

Arundel County Police Department, were visiting an inmate, who was about to be paroled, at the Maryland Correctional Camp Center in Jessup on July 22, 1977. The two detectives agreed to help that inmate get a job upon his release. The appellant, who was also about to be paroled from a sentence he was then serving on an unrelated matter, overheard the conversation. Curious, he asked Detective March for help in getting a job also and for help in dealing with various personal problems with his wife and others. Detective March responded that he would come back on another occasion and take the appellant out of the institution in order to sit down and talk about these problems. Candidly, Detectives March and Mock admitted that they were "very happy" with this turn of events because the appellant had long been the prime suspect in the Metzler murder case and the detectives were anxious to seize the opportunity to talk to him.

On July 25, 1977, Detective March obtained a "writ of habeas corpus" from District Court Judge George Taylor which instructed him to take the appellant from the camp center at 8 a.m. on July 26, 1977, and to return him thereto by midnight on July 28, 1977. Pursuant to the writ, Detectives March and Mock took the appellant into custody at 8:15 a.m. on July 26.

They took him to the Millersville Police Station. The appellant was advised of his Miranda rights and signed a waiver form. After a brief discussion about personal problems, the conversation turned to the Metzler murder. The detectives asked the appellant point-blank if he had killed the little girl. The appellant responded that because of the fact that he had been drinking heavily during the period in question, he "did not know whether he did or he didn't." On July 26, the questioning of the appellant stopped at approximately 7 p.m.

On the following day, the appellant was questioned for approximately one hour in the morning. He was taken out to lunch at 11:15 a.m. Following that, he was taken to view the murder scene and was returned to the police station at sometime between 3 and 4 p.m. At 5 p.m., he was taken to dinner. At 6:30 p.m., the final interrogation began. The

confession was completed at about 8 p.m. on July 27. These facts must now be measured against the standard of Rule 723 a and *Johnson v. State.*

The very thorough analysis by Judge Levine for the Court of Appeals in *Johnson* makes it explicit that the *Johnson* rule represents the adoption in Maryland of the so-called *McNabb-Mallory* rule. 282 Md. 320-332. The Supreme Court cases of *Mallory v. United States,* 354 U. S. 449, 77 S. Ct. 1356, 1 L.Ed.2d 1479 (1957), and *McNabb v. United States,* 318 U. S. 332, 63 S. Ct. 608, 87 L. Ed. 819 (1943), along with *Upshaw v. United States,* 335 U. S. 410, 69 S. Ct. 170, 93 L. Ed. 100 (1948), mandated in the federal courts the *per se* exclusion of a confession taken during a period of unnecessary delay following an arrest. The Court of Appeals points out, at 282 Md. 323:

> "The Supreme Court has itself acknowledged that the *McNabb-Mallory* rule is not derived from the Constitution, but rather is the product of the exercise of the Court's supervisory authority over the administration of criminal justice in the federal courts. . . . Consequently, the rule is not binding on the states." (Citations omitted)

After thoroughly analyzing the pros and cons of the *McNabb-Mallory* rule, the majority of the Court of Appeals adopted it explicitly. Indeed, the dissenting opinion of Chief Judge Murphy, joined in by Judge Smith and Judge Orth, is equally explicit as to the *per se* adoption of the so-called *McNabb-Mallory* rule, saying at 282 Md. 342-343:

> "As the majority readily acknowledges, the per se exclusionary rule is not constitutionally mandated but derives from an exercise by the Supreme Court of the United States of its supervisory authority over the lower federal courts. *McNabb v. United States,* 318 U. S. 332, 63 S. Ct. 608, 87 L. Ed. 819, decided in 1943; *Upshaw v. United States,* 335 U. S. 410, 69 S. Ct. 170, 93 L. Ed. 100, decided in 1948; and *Mallory v. United States,* 354 U. S. 449, 77 S. Ct. 1356, 1 L.Ed.2d 1479, decided in 1957, collectively make clear

that it was the Supreme Court's view that the right of an accused person to prompt presentment before a judicial officer following arrest would be most effectively protected by a rule which automatically excluded from evidence confessions obtained during a period of 'unnecessary delay' in presenting the accused for arraignment."

Since the rule of *Johnson* is, in effect, the local application of the federal *McNabb-Mallory* rule, we have the benefit of the large body of case law interpreting *McNabb-Mallory* and available to us, at least persuasively. Turning to the Supreme Court itself as the ultimate expositor of *McNabb-Mallory,* we have no difficulty in holding that the *Johnson-McNabb-Mallory* rule does not apply to the case before us. In *United States v. Carignan,* 342 U. S. 36, 72 S. Ct. 97, 96 L. Ed. 48 (1951), the Supreme Court was dealing with a situation very similar to the one in this case. Carignan was being lawfully detained on charges of assault with intent to rape when he was questioned by the police about the murder for which he was ultimately convicted. Claiming that he had been interrogated in violation of the rule in *McNabb* and *Upshaw* (*Mallory* had not yet been decided), he obtained a reversal of his conviction in the United States Court of Appeals for the Ninth Circuit. *Carignan v. United States,* 185 F. 2d 954. On certiorari, the Supreme Court reversed the Ninth Circuit and reinstated the conviction holding that the *McNabb-Upshaw* principle did not apply when the subject of the interrogation is already in custody on other charges. The Supreme Court stated the problem at 342 U. S. 41-42:

"[T]his Court in recent years has enforced a judicially created federal rule of evidence, to which the label '*McNabb* rule' has been applied, that confessions shall be excluded if obtained during 'illegal detention due to failure promptly to carry a prisoner before a committing magistrate, whether or not the "confession is the result of torture, physical or psychological." ' Violation of the *McNabb* rule, in the view of the Court of Appeals, not the assertedly

involuntary character of the confession, caused that court to reverse the conviction. Our problem in this review is whether the *McNabb* rule covers this confession or, if not, whether that rule of evidence should now be judicially extended to these facts."

In then holding that the *McNabb* rule did not apply to circumstances where the subject of the interrogation was already in lawful detention on other charges, the Supreme Court explained at 342 U. S. 43-44:

"One cannot say that this record justifies characterization of this confession as given during unlawful detention. Rule 5, Federal Rules of Criminal Procedure, does not apply in terms, because Carignan was neither arrested for nor charged with the murder when the confession to that crime was made. He had been arrested and committed for the assault perpetrated six weeks after the murder. His detention, therefore, was legal. Further, before the confession, there was basis for no more than a strong suspicion that Carignan was the murderer. That suspicion arose from a doubtful identification by a person who had in passing seen a man resembling the respondent at the scene of the murder and from a similarity of circumstances between the murder and the assault. The police could hardly be expected to make a murder charge on such uncertainties without further inquiry and investigation. This case falls outside the reason for the rule, i.e., to abolish unlawful detention."

The Supreme Court concluded by stating its holding explicitly at 342 U. S. 45:

"We decline to extend the *McNabb* fixed rule of exclusion to statements to police or wardens concerning other crimes while prisoners are legally in detention on criminal charges."

The United States Courts of Appeals have on a number of occasions ruled that the *McNabb-Mallory* rule does not apply

when the suspect being interrogated is already in lawful detention. One such case was *Stille v. United States,* 354 F. 2d 233 (10th Cir. 1965). Stille was arrested by New Mexico state authorities on May 16, 1965, for a series of traffic offenses and was sentenced to 30 days in jail. During the first four days of that detention, he was questioned by federal authorities and gave a statement used to convict him of a violation of the Dyer Act. He sought to have it excluded under the rule of *McNabb-Mallory* because he had not been taken, without undue delay, before a United States commissioner. The Tenth Circuit declined to apply *McNabb-Mallory,* holding:

> "[N]either *Mallory* nor Rule 5 constitutes a bar to the right of law enforcement officers to investigate crime by inquiry from obvious suspects. *Shultz v. United States,* 10 Cir., 351 F. 2d 287. Stille was in lawful custody of state authority, was advised of his right to remain silent and of his right to counsel, and was in no way coerced. His statements were properly admitted."

Of similar import is *Wakaksan v. United States,* 367 F. 2d 639 (8th Cir. 1966). The defendant was there serving a sentence, handed down by tribal authorities, for a liquor law violation. While serving that sentence, he was interrogated and gave a statement which helped to convict him of voluntary manslaughter. In rejecting his contention that his rights under *McNabb-Mallory* had been violated, the Eighth Circuit said at 367 F. 2d 644-645:

> "Where defendant is legally detained on a conviction of a crime and the police are not certain of his guilt of a second crime, he can be questioned and a statement may be taken without violating the *McNabb* rule. *United States v. Carignan....*"

See also *Easley v. United States,* 333 F. 2d 75 (10th Cir. 1964); *Davis v. North Carolina,* 339 F. 2d 770, 777-778 (4th Cir. 1964); *United States v. Reed,* 413 F. 2d 338, 340 (10th Cir. 1969).

In the case at bar, the appellant was not under arrest for the Metzler murder. He was under lawful detention, serving

a sentence for another crime. He was not, in the very terms of Rule 723 a, "a defendant ... detained pursuant to an arrest" and the exclusionary rule of *Johnson-McNabb-Mallory* does not, therefore, apply to the confession he gave.

The other contentions raised by the appellant will not detain us long. He claims that his confession was the tainted product of his illegal arrest by Detectives March and Mock. Secondarily, we hold that it was a voluntary act so that even if we assumed a primary taint (we do not), the confession was not "come at by exploitation of that illegality" but resulted from "means sufficiently distinguishable to be purged of the primary taint." *Wong Sun v. United States,* 371 U. S. 471, 488, 83 S. Ct. 407, 9 L.Ed.2d 441, 455 (1963). Primarily, we hold that there was no arrest. We find highly persuasive *United States v. Demetracakis,* 334 F. 2d 781 (7th Cir. 1964). The defendant there was being held in pretrial detention by Illinois authorities when federal authorities took him from his cellblock, questioned him and obtained a confession which led to a federal conviction. He claimed that his confession was the tainted product of this illegal detention or federal arrest. In holding against him, the Seventh Circuit said at 334 F. 2d 783-784:

> "The defendant asserts that Inspector Culkin took advantage of detention, which he characterizes as illegal, to obtain this confession which thereby became inadmissible in evidence. He considers his detention to be illegal because of a delay in taking him before a magistrate.... He also complains of Inspector Culkin's failure to bring him before a U. S. Commissioner although he had reasonable grounds for an arrest and told defendant, who denied his guilt three times before confessing, that he was sure of defendant's guilt. Defendant considers that his removal from the cellblock to an office on the second floor of the police station for questioning, in effect, constituted a federal arrest. We think this is an untenable position. It is clear from the record that defendant was not arrested by

the federal officers until the return of a no-bill by the Cook County Grand Jury, on the state charge, whereupon he was remanded to the federal government.

Assuming, without deciding, that this question is properly before us, we must hold that there is no showing of illegal detention."

The appellant takes umbrage at the fact that the State "impeached" its own identification witness, Sylvia Hutton. At the trial, Miss Hutton testified that she had seen the appellant sitting in a white station wagon with the Metzler girl on the afternoon she disappeared. On several earlier occasions, Miss Hutton had indicated to the police that she could not identify the appellant. On one occasion, she had identified another person. All of this, as well as her explanations therefor, was thoroughly explored on both direct examination and cross-examination. The appellant's present point is that the impeachment of credibility would have been more devastating if he had had the first crack and if the State had not "drawn the sting" on its own direct examination. Two considerations argue against reversible error. The issue here was the reliability of an identification. *Neil v. Biggers,* 409 U. S. 188, 199, 93 S. Ct. 375, 381, 34 L.Ed.2d 401, 411 (1972), listed among the "factors to be considered in evaluating the likelihood of misidentification" both the "level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." The prior inconsistent statement or inconsistent performance takes on a relevance in the context of this issue which it might not otherwise possess. In this case, moreover, the total performance by the identifying witness was painstakingly combed over and we are persuaded, beyond a reasonable doubt, that the peripheral question of who got to bring out the information first did not contribute to the verdict and was harmless error. *Dorsey v. State,* 276 Md. 638, 350 A. 2d 665 (1976).

The State called a witness, Taylor Evans, an inmate, who had earlier given a statement to the State's Attorney and his investigator. On the stand, the witness refused to testify. He

was ordered to do so by the court. After one such order, the witness blurted out, "Well, I feel my life is more important to me than your order." The appellant moved for a mistrial which was denied. We cannot say that the trial judge abused his discretion in refusing to abort a lengthy and serious trial because of this blurt. The appellant's companion contention that he did not get to cross-examine the recalcitrant witness before he was taken into custody for contempt is not properly before us. He never attempted to cross-examine the witness and no issue in this regard was raised in the lower court or there decided. Maryland Rule 1085.

John Pierson testified for the State that at a time when he and the appellant were fellow inmates at the Maryland House of Correction, the appellant admitted to him that he had once killed a young girl. On cross-examination, the defense brought out the prior criminal record of the witness by way of impeaching his credibility. To rehabilitate that credibility and to refute the notion that the witness had lately fabricated his trial testimony, the State offered a letter which the witness had written to the State's Attorney some eight months prior to the trial in which he had recounted essentially the same story. The court instructed the jury to consider the letter only for its rehabilitative purpose — the fact that it was written — and not the truth of its contents. The appellant now contends that the jury was inflamed against him by the characterization in the letter of him as "a fagot." The fuller context was, "I was in the cell with a fagot last year and he told me he was a suspect at the time of the murder. He also admitted he did it. I was about to take justice in my hands but the big mouth alerted a guard." The only objection made by appellant's counsel was to the letter as a whole. We agree with the trial judge that it was admissible for rehabilitative purposes. Counsel never moved to excise or block out the word "fagot" and that limited question is not before us.

The appellant objects to the jury instruction given on the subject of reasonable doubt. When asked at trial if there were any exceptions to the instructions, appellant's counsel replied, "No exceptions for the Defendant." There is nothing,

therefore, preserved for appellate review. Maryland Rule 757
f and h. There was no plain error.

The point made by the appellant as to a breach of the
husband-wife confidential communications privilege
disappears on closer analysis. The appellant's first wife, Doris
Chaney, was a witness for the State. The trial judge properly
ruled that Mrs. Chaney could not testify as to any
communications made by the appellant to her about the
Metzler murder during the course of their marriage. She was
permitted to testify, however, as to those things she observed
— that he returned home one night in December of 1971
covered with blood. The present contention revolves about the
colloquy that then followed:

> "[STATE'S ATTORNEY]: My next question, listen
> to my next question. Why didn't you report it to the
> police?
> [DEFENSE COUNSEL]: Objection.
> [THE COURT]: Overruled.
> [DORIS CHANEY]: Because I felt like I was safe
> then to tell because he threatened my life and
> threatened it bad.
> [DEFENSE COUNSEL]: Objection.
> [STATE'S ATTORNEY]: Don't say anything that he
> said.
> [DORIS CHANEY]: Okay."

A defense motion for mistrial was made and denied. The first
objection was to the question, "Why didn't you report it to
the police?" There was nothing improper about that question
and the objection was properly overruled. In arguing that a
mistrial should have been granted, the appellant does not
urge that the answer given by Mrs. Chaney was
inflammatory or prejudicial but only that it breached the
privilege for confidential marital communications. We need
not even get into the complexities of *Harris v. State,* 37 Md.
App. 180, 376 A. 2d 1144, and *Coleman v. State,* 281 Md. 538,
380 A. 2d 49, in this regard for the simple reason that the
answer objected to did not go into the substance of a

communication. The fact that the appellant threatened his wife is a significant act that may be testified to. We are not dealing here with words or thoughts communicated but simply with an act. We see no error.

The appellant's final contention is that a photographic identification of him by Sylvia Hutton was the tainted product of an impermissibly suggestive viewing procedure. A thorough pretrial hearing on this question was held. There was no shred of testimony remotely suggesting that anyone had prompted Ms. Hutton in selecting the appellant's picture from an array of 12 to 14 photographs. The fact that Ms. Hutton had agreed to submit to hypnosis three days prior to the photographic identification in order "to prod her memory concerning the incident" in no way taints the procedure that occurred three days later. The appellant's final *pro se* point about the lapse of time between the crime in December, 1971, and the identification on May 19, 1977, goes to the weight of the identification on the merits and not to the constitutional question of police procedure in staging the photographic viewing.

> *Judgment affirmed; costs to be paid by appellant.*