825 A.2d 452

STATE of Maryland

v.

Richard Miles CHANEY.

No. 89, Sept. Term, 2002.

Court of Appeals of Maryland.

June 10, 2003.

Zoe Gillen White, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen. of Maryland, on brief), Baltimore, for petitioner.

Fred Warren Bennett (Michael E. Lawlor of Bennett & Nathans, LLP, on brief), Greenbelt, for respondent.

Argued Before BELL, C.J., and ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL and BATTAGLIA, JJ.

HARRELL, Judge.

## I.

On 19 April 1978, Richard Miles Chaney was convicted by a jury in the Circuit Court for Calvert County of first degree murder. On the same day as the verdict was rendered, Chaney was sentenced by the trial judge to life imprisonment. On direct appeal, his conviction was affirmed by the Court of Special Appeals. *Chaney v. State*, 42 Md.App. 563, 402 A.2d 86, *cert. denied*, 286 Md. 745 (1979).

The present case arises from the Circuit Court's 12 September 2000 denial of Chaney's pro se "Motion for Appropriate Relief (To Grant Post–Conviction Relief, Habeas Corpus Relief, To Correct Illegal Sentence, or to Reconsider Sentence)." Chaney averred that the sentence imposed was illegal or irregular because the sentencing judge did not consider, as an option at sentencing, the suspension of all or some part of his life sentence. The motions judge in the Circuit Court,[1] in denying Chaney's motion without hearing, treated it as a Petition for Post–Conviction Relief.

Chaney filed with the Court of Special Appeals an Application for Leave to Appeal the denial of his motion. Thereafter, he retained counsel who filed a Motion to Treat the Application for Leave to Appeal as a Notice of Appeal, on the basis that Chaney's motion in the trial court actually was a motion to correct illegal sentence. The Court of Special Appeals granted Chaney's appellate counsel's motion, and transferred the case to its regular docket. On 6 August 2002, after briefing and oral argument, the Court of Special Appeals filed an unreported decision reversing the decision of the Circuit Court and remanding the case for a new sentencing hearing. The State then filed a Petition for Writ of Certiorari, which we granted. *State v. Chaney*, 372 Md. 132, 812 A.2d 288 (2002).

---

1. The judge who denied the motion was a different judge than the one who presided at trial and sentencing.

## II.

On 6 December 1971, ten-year-old Elizabeth Ann Metzler failed to return from school to her home in northern Anne Arundel County. The following day, her dead body was found in the woods several miles from her home. She had been molested sexually and strangled. Richard Miles Chaney was convicted of the murder.

Following return of the verdict, sentencing proceeded immediately:

Judge: Gentlemen, lets take this matter up for sentencing.

Mr. [State's Attorney], is there anything else you would like to present?

State's Attorney: No, sir.

Judge: [Defense counsel], is there anything you would like to say? Sentencing, there is not a lot either can say.

Defense Counsel: I have discussed the possibility of filing a motion for a new trial with my client and he waives his right to file a motion for a new trial and we submit to sentencing.

Judge: You have a perfect right to file a motion for a new trial in this court anytime up to thirty days from today. Sentence or unsentence has nothing to do with that here. That is an old hangover from Baltimore City days but we don't operate under that anymore.

All right. Richard Miles Chaney, stand up.

Mr. Chaney, is there anything you wish to say to the Court before sentence is determined in this case? If so, the Court affords you an opportunity to say it at this time.

Defendant: No, sir.

Judge: Well gentlemen, there is only one punishment in this State for the crime of which this man has been convicted. The law provides a single penalty and no other penalty and so the sentence in the discretion of the Court in this case is limited to the imposition of that penalty.

Accordingly, Madame Clerk, the sentence of the Court in this case is that the Defendant be committed to the jurisdiction of the Division of Corrections for the remainder of his natural life. Mr. Chaney, the Court informs you that you have the following rights. You may appeal this entire proceeding to the Maryland Court of Special Appeals. That right is exercised by filing a written order for appeal with the Clerk of this court. It must be filed not later than thirty days from today.

Secondly, you may apply to a panel of Circuit Trial Judges to review the sentence imposed upon you by this member of the court. That right is exercised by filing a written application for review with the Clerk of this Court on forms which the Clerk will provide to you at your request. It must be filed not later than thirty days from today.

Finally, you have a right to move this member of the court to modify or reduce the sentence imposed upon you. That right is exercised by filing a written motion for reconsideration. It must be filed with the Clerk of this court not later than ninety days from today or not later than ninety days from the date of a mandate of any or of the last Appellate Court which would hear this matter.

Now, it is [your attorney's] responsibility as your counsel under our rules of court to initiate any or all three of these proceedings if you request him to do so. Once he has done that his obligation to you as your attorney under our rules of practice ends unless, of course, you make other arrangements with him for further representation.

### III.

 The State presents one question for review:

Did the Court of Special Appeals err in holding that Chaney's sentence was illegal due to the alleged failure of the sentencing court to recognize its discretion to suspend part of Chaney's life sentence?

Respondent, in his brief, dissects this somewhat generic question into three sub-parts:

A. [The sentencing judge] erred in failing to recognize that he had the discretion to suspend a portion of the life sentence imposed in this case.

B. The failure to exercise discretion rendered Mr. Chaney's sentence illegal and/or Mr. Chaney's sentence was imposed in an irregular manner.

C. If the Sentence imposed in this case is not illegal or imposed in an irregular manner, this court can still grant Mr. Chaney a new sentencing hearing pursuant to the Post Conviction Procedure Act.

The first two of Chaney's formulated queries were presented by him, as Appellant there, to the Court of Special Appeals. The third, (C), is new and not properly before us for two reasons. First, it was not raised in the trial court. *See* Maryland Rule 8–131(a)(ordinarily the appellate court will not decide an issue not raised in or decided by the trial court); *Walker v. State*, 338 Md. 253, 262–63, 658 A.2d 239, 243 (1995). Second, this issue was not raised by way of cross-petition in this Court, nor was it included in our order granting the writ. *See Gonzales v. State*, 322 Md. 62, 69, 585 A.2d 222, 226 (1991)(issue not presented in petition for writ will not be addressed); *Maus v. State*, 311 Md. 85, 106, 532 A.2d 1066, 1077 (1987). Additionally, appellate counsel for Chaney, during oral argument before us, affirmatively withdrew any argument that this case involves an illegal sentence; thus we shall not address his question (C).[2]

Our reading of the opinion of the Court of Special Appeals reveals that the intermediate appellate court reversed the trial court because it viewed the trial judge as having imposed the sentence in 1978 under the mistaken assumption that he did not have the power to suspend any portion of the life sentence. We therefore limit our review to the question of whether, on

---

2. A party may abandon some of the issues raised below and stand on appeal on a narrower ground. *Harmon v. State Roads Commission,* 242 Md. 24, 30–31, 217 A.2d 513, 516 (1966).

this record, the trial judge failed to recognize that he had the discretion to suspend all or a portion of the life sentence imposed in this case, and if so, does that error require a new sentencing proceeding.

## IV.

 Respondent argues that the trial judge erred when he imposed a life sentence without expressly recognizing that the sentence, or a portion of it, could have been suspended. Chaney relies entirely on the transcript of the sentencing proceeding to prove his point. Specifically, he points to the following language employed by the judge:

> Well, gentlemen, there is only one punishment in this State for the crime of which this man has been convicted. The law provides a single penalty and no other penalty and so the sentence in the discretion of the Court in this case is limited to the imposition of that penalty.

In Respondent's view, this statement indicates that the trial judge was under the impression that he had no discretion to suspend all or any portion of the life sentence. To bolster this argument, Respondent alleges an absence of any mention by the trial judge that he was aware of the suspension option. Respondent's argument, in short, is that because the trial judge failed to mention the possibility of suspension of sentence, and stated instead that his discretion was limited to the imposition of the statutory penalty, the trial judge must not have realized that he had the power to suspend the life sentence or a portion of it. Chaney, therefore, argues that he is entitled to be sentenced anew so that effectively a different sentencing judge may consider the possibility of a suspended sentence on the facts of this case.[3]

The Court of Special Appeals agreed with Respondent's position, finding that the trial judge "failed to recognize that he had the discretion to suspend all or part of appellant's

---

**3.** The trial judge who presided over Chaney's jury trial and sentenced him in 1978 retired in 1987, well prior to the filing of Respondent's motion giving rise to the present case.

sentence." In reaching its conclusion, the intermediate appellate court relied on *Williamson v. State*, 284 Md. 212, 395 A.2d 496 (1979) and *Sanders v. State*, 105 Md.App. 247, 659 A.2d 356 (1995).

In *Williamson*, we were confronted with a situation where the sentencing judge refused to follow an opinion of this Court recognizing that a life sentence could be suspended. In that case, the following transpired in the trial court:

[The Court]: As far as the murder conviction is concerned, there's no choice. She gets life.

[Defense Counsel]: No, Your Honor. There is a choice. You can suspend part of it. I brought the *Wooten* case with me.[4]

[The Court]: I understand that, and I completely disagree with Judge Raine and the Court of Appeals. I think the Legislature said when a person kills somebody else or causes them to be killed, it's life. So as far as I am concerned, the sentence on the murder charge is life ...

[Defense Counsel]: I was going to comment to the Court on the *Wooten* case, but I guess I won't do that either.

[The Court]: No. I have very strong feelings about that.

284 Md. at 213–14, 395 A.2d at 496–97. We reversed, observing that "[b]y precluding any consideration of suspending any part of the life sentence, the trial judge denied appellant's

---

4. We held in *State v. Wooten*, 277 Md. 114, 116–118,352 A.2d 829, 831–32 (1976), two years before Chaney's conviction at issue here, that § 641A was applicable to "mandatory" life sentences for murder. Maryland Code (1957, 1971 Repl.Vol.), Article 27, § 641A read in pertinent part:

Upon entering a judgment of conviction, the court having jurisdiction may suspend the imposition or execution of sentence and place the defendant on probation upon such terms and conditions as the court deems proper. The court may impose a sentence for a specified period and provide that a lesser period be served in confinement, suspend the remainder of the sentence and grant probation for a period longer than the sentence but not in excess of 5 years.

Article 27, § 641A was repealed by Ch 356, Acts 2001, Effective October 1, 2001 and re-enacted with amendments as Maryland Code (1974, 2001 Repl.Vol.), Criminal Procedure Article, §§ 6–221 and 6–222(a).

right to a proper exercise of the discretion vested in him."
284 Md. at 215, 395 A.2d at 497.

In *Sanders*, the Court of Special Appeals was confronted
with a situation where a judge on resentencing apparently felt
that he was constrained in his analysis by what a prior
sentencing judge had done. The intermediate appellate court
observed:

> It is apparent from the record that the resentencing
> judge felt bound by the nature of the sentence imposed by
> the original trial judge. Prior to hearing the evidence by
> Sanders and his counsel, the judge checked with defense
> counsel to be sure the earlier sentence had been imposed
> consecutively. Prior to announcing the sentence, the judge
> noted Sanders's accomplishments but then he said that he
> was "stuck with a handicap" and had to "stand in the [prior
> judge's] shoes." He indicated that it was hard to "second
> guess what [the prior judge] would or would not do," and
> then he imposed virtually the same sentence as [the prior
> judge] had, simply reducing it to the maximum that was
> legally allowed. The law requires the judge to conduct his
> own inquiry and to reach his own sentences based upon the
> evidence before him. Because it appears that the judge
> erroneously felt constrained to follow his predecessor's deci-
> sion and was therefore motivated by impermissible consid-
> erations, Sanders is entitled to a new sentencing hearing.

105 Md.App. at 256–57, 659 A.2d at 361.

The Court of Special Appeals found the case *sub judice*
analogous to *Williamson* and *Sanders*, holding that:

> [i]n this case the sentencing judge believed that the only
> option open to him was a sentence of life imprisonment, and
> he, therefore, did not consider the possibility that a portion
> of the sentence could be suspended. Since this was an
> impermissible consideration, we will remand the case to the
> circuit court for resentencing.

We find the reasoning of the Court of Special Appeals unper-
suasive, and the cases it relied on distinguishable. We there-
fore reverse.

This case turns on how we today, some twenty-five years after the event, interpret the sentencing judge's remark that "[t]he law provides a single penalty and no other penalty and so the sentence in the discretion of the Court in this case is limited to the imposition of that penalty." The statute in effect at the date of the crime, and under which Chaney was sentenced, Maryland Code (1957, 1971 Repl.Vol.), Article 27, § 413, provided in relevant part that "[e]very person convicted of murder in the first degree .... shall suffer death, or undergo a confinement in the penitentiary of the State for a the period of their natural life." [5] Section 413 did not address the potentiality for suspension of the sentence.

The version of Art. 27, § 413 in effect at the time of Elizabeth Ann Metzler's murder on 6 December 1971 subsequently was found to be unconstitutional, as regards the death penalty, in *Bartholomey v. State,* 267 Md. 175, 297 A.2d 696 (1972), based on the U.S. Supreme Court's decision in *Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). In *Bartholomey,* after invalidating the death penalty, this Court observed that:

> The invalidity of Bartholomey's death sentences does not, of course, affect the legality of either of his underlying murder convictions. The "further proceedings" required to be taken under *Furman* are limited to those involved in imposing valid sentences upon Bartholomey. The only law-

---

5. As pointed out *infra,* the statute as it existed at the time of Elizabeth Ann Metzler's murder in 1971 subsequently was found to be unconstitutional in *Bartholomey v. State,* 267 Md. 175, 297 A.2d 696 (1972). It was replaced by Maryland Code (1957, 1976 Repl.Vol.), Article 27, § 413, applicable to offenses committed on or after 1 July 1975, which in turn was found to be unconstitutional in *Blackwell v. State,* 278 Md. 466, 365 A.2d 545 (1976). That statute, declared unconstitutional in *Blackwell,* was replaced by renumbered Maryland Code (1957, 1976 Repl.Vol., 1978 Cum.Supp.), Article 27, § 412, applicable to offenses committed on or after 1 July 1978 (over three months after Chaney's conviction), which thereafter remained substantively unchanged. Article 27, § 412 was repealed by Ch 26, Acts 2002, effective October 1, 2002 and re-enacted as Maryland Code (1974, 2002 Repl.Vol.), Criminal Law Article, §§ 2–101, 2–201, 2–202, 2–203, 3–301, 3–302, and 3–303.

ful sentence that can be imposed for murder in the first degree under the controlling statute (§ 413) is life imprisonment; no discretion is lodged in the sentencing judge and the imposition of any other sentence would plainly be illegal.

267 Md. at 185, 297 A.2d at 701 (citations omitted)(footnote omitted).[6] The sentencing judge's statement, therefore, far from being in error, was legally correct in its historical context, and, so understood, reflected an implicit knowledge of the extant, though recent, changes in the case law regarding sentencing in murder cases in Maryland at that time.

An important point here is that, temporally, one must pass a sentence before one can suspend it. As noted, the sentencing judge correctly stated the law. Under Art. 27, § 413, the only sentence available at the time under these circumstances was life imprisonment. The issue before us, therefore, is whether the sentencing judge's failure expressly and consecutively to acknowledge the existence of a second statute permitting a suspension of that sentence, Maryland Code (1957, 1971 Repl. Vol.) Article 27, § 641A,[7] is sufficient to infer that he was unaware of its potential application to the sentence he imposed in the case *sub judice*. We conclude that it is not.

A compelling reason for not interpreting the fact that the sentencing judge did not state expressly that he was aware of and considered that the life sentence, or a portion of it, could be suspended as implying that he was unaware of that option is presented by the State in its brief here, which observes:

[T]he finding of the intermediate appellate court runs afoul of the well-established principle that "[t]rial judges are presumed to know the law and to apply it properly." *Ball v. State,* 347 Md. 156, 206, [699 A.2d 1170, 1194](1997); *cert. denied,* 522 U.S. 1082[, 118 S.Ct. 866, 139 L.Ed.2d 763] (1998)(holding that, regardless of the prosecutor's representation of the purpose of victim impact evidence, the sentenc-

---

**6.** See *Wooten,* 277 Md. at 117 n. 4, 352 A.2d at 832 n. 4; *Blackwell,* 278 Md. at 473–75, 365 A.2d at 549–50.

**7.** See *supra* note 4.

ing court is presumed to have made proper use of such evidence.) Accord *Attorney Grievance Commission v. Jeter*, 365 Md. 279, 288, [778 A.2d 390, 395] (2001)(while lower court "did not elaborate on the reason [for finding no violation of Rule 8.1], we presume that judges know the law and correctly apply it"); *Davis v. State*, 344 Md. 331, 339–46, [686 A.2d 1083, 1087–90] (1996)(as "trial judges are presumed to know, and properly to have applied, the law," trial court's determination of inconsistency in witness statements was implicit); *Whittlesey v. State*, 340 Md. 30, 48, [665 A.2d 223, 232] (1995), *cert. denied*, 516 U.S. 1148[, 116 S.Ct. 1021, 134 L.Ed.2d 100] (1996)("although it would have been preferable for the trial judge to state the reasons for [overruling a *Batson* objection] expressly, we presume that the trial judge properly applied the law"); *Gilliam v. State*, 331 Md. 651, 673 [629 A.2d 685, 696] (1993), *cert. denied*, 510 U.S. 1077[, 114 S.Ct. 891, 127 L.Ed.2d 84] (1994)("we should assume that [the trial judge] did not need to be reminded that he could not consider Gilliam's confession unless he found that confession voluntary beyond a reasonable doubt"); *Medical Mut. Liability Ins. Soc. of Maryland v. Evans*, 330 Md. 1, 34, [622 A.2d 103, 119](1993)(judges are "presumed to know the law and lawfully and correctly to apply it"); *Beales v. State*, 329 Md. 263, 273, [619 A.2d 105, 110] (1993)(recognizing "strong presumption that judges properly perform their duties" [and observing that ". . . trial judges are not obliged to spell out in words every thought and step of logic . . .".[8]]

---

**8.** See also *Wagner v. Wagner* 109 Md.App. 1, 50, 674 A.2d 1, 25 (1996)("[W]e presume judges to know the law and apply it, even in the absence of a verbal indication of having considered it."); *Reuter v. Reuter*, 102 Md.App. 212, 244, 649 A.2d 24, 39 (1994)("We presume that the trial judge knows the law, and there is no indication in the record that the court was not aware of the statutory factors."); *John O. v. Jane O.*, 90 Md.App. 406, 429, 601 A.2d 149, 160 (1992)("The trial judge need not articulate each item or piece of evidence she or he has considered in reaching a decision. . . . The fact that the court did not catalog each factor and all the evidence which related to each factor does not require reversal."). See also *Thomas v. City of Annapolis*, 113 Md.App. 440, 450, 688 A.2d 448, 452 (1997), observing that:

■ The presumption that trial judges know the law and apply it properly is of long standing, and appears to spring from multiple sources. One of these sources is the strong presumption that judges, like other public officers, perform their duties properly. *Bank of the United States v. Dandridge*, 12 Wheat. 64, 25 U.S. 64, 69–70, 6 L.Ed. 552, 554 (1827); *Schowgurow v. State*, 240 Md. 121, 126, 213 A.2d 475, 479 (1965); *Albrecht v. State*, 132 Md. 150, 156, 103 A. 443, 445 (1918). Another source is the presumption that all citizens are charged with an awareness of the law. As the Court of Special Appeals pointed out in *Samson v. State*, 27 Md.App. 326, 334, 341 A.2d 817, 823 (1975):

> Judges, lawyers and laymen alike are all presumed to know the law regardless of conscious knowledge or lack thereof, and are presumed to intend the necessary and legitimate consequences of their actions in its light. *Grumbine v. State*, 60 Md. 355, 356 (1883). Without that presumption one could escape the consequence of the law merely by denying prior knowledge of its existence and one's ignorance would become paramount to the law. *Cf. Hopkins v. State*, 193 Md. 489, 498–499[, 69 A.2d 456] (1949), supra. ["Ignorantia juris, quod quisque tenetur scire, neminem excusat."] "[I]gnorance of the law, which every man is bound to know, excuses no man, is as well a maxim of our own law, as it was of the Romans." 4 Cooley, *Blackstone*,

---

While it would be beneficial on appeal to have a more developed understanding of the trial court's reasoning as to why summary judgment was granted, without evidence to the contrary, we must assume that the court carefully considered all the various grounds asserted and determined all or at least enough of them to merit the granting of the summary judgment. *See Bond v. Nibco, Inc.*, 96 Md.App. 127, 133, 623 A.2d 731 (1993). Since a trial judge is presumed to know the law, the judge is not required to set out in detail each and every step of his thought process. *Kirsner v. Edelmann*, 65 Md.App. 185, 499 A.2d 1313 (1985). On appeal, it is the burden of the appellant to show judicial error. *Bradley v. Hazard Technology Co.*, 340 Md. 202, 665 A.2d 1050 (1995).

*Accord Hebb v. State*, 31 Md.App. 493, 499–500, 356 A.2d 583, 587–88 (1976).

Sec. 27 at 1233. That maxim applies equally to state and federal law, to both of which we are subjected.[9]

The general presumption that trial judges know the law and apply it properly, however, is much more than a mere combination of the above maxims. Such a simplistic view would tend to minimize and trivialize the foundational role of trial judges in our legal system, our government, and in our society as a whole. The social and moral character of that role as one of the cornerstones of our system of law and governance was well observed over one hundred and fifty years ago, in the case of *Moody v. Davis*, 10 Ga. 403, 411–13 (1851), in words which are as elemental today as they were when written:

> The people are the depository of judicial power with us. Judges are their authenticated representatives, charged with the duty of dispensing justice, according to the constitution and laws of the State, and according to the constitution of the United States. . . . It is the duty of the Judge to enforce the laws of the State, made in accordance with State and Federal Constitution—*the whole law*, as it applies, in his judgment, to the cases which come before him. He has no right and no power to withhold the application of one single principle of law, to a single case over which he has jurisdiction; he has no dispensation, justifying or excusing an omission to *apply the law*. Neither conscientious scruples about the morality of the law, nor convictions of its inexpediency—nor what are called the tendencies of the age—nor political biases or party associations—nor fear, nor favor, nor reward, nor the hope of reward, nor all of these combined, should be sufficiently potent to induce him, in his judgments, to *transcend* the law, or to *fall short* of its strict enforcement. If such are his duties, it is wholly immaterial whether a principle of law be brought to his notice by counsel, or is suggested by his own knowledge and observation. If the principle grow out of the case, and he believes it to be law, he is bound by the responsibilities of his position—by his official oath—by the very nature of his

---

9. See also *Grumbine*, 60 Md. 355, 356 (1883).

office—by all the expediencies of judicature, to give it full effect. To *that* he is called—for *that* he is clothed with the people's (if I may so speak) judicial sovereignty; and if conscience or aught else suggests a higher law, and conscience cannot yield, let him retire and give place to those who are willing to execute the laws. It is the business of the Judge to *know* the law; that he does *know* the law, is the presumption of all the departments of the State. He is selected, (such at least is the theory,) on account of his knowledge of the laws, as well as on account of other qualifications. He is presumed to bring to the Bench fitness for its duties. This presumption of knowledge does not attribute to him perfection in the knowledge of a science, to the mastery of which the allotted term of human life, occupied with all possible diligence, is insufficient. It does not charge him with the indispensable necessity of ascertaining and ruling every point of law which may spring out of the case, from its beginning to its conclusion. Hence, a mere omission to suggest and apply a point not brought to his notice, is not error, unless, as I suppose, it were made to appear to a corrective tribunal that he was cognizant of it. He is not presumed, of course, to be infallible; and hence, he is not liable to an action for any judgment which he may, in good faith, render in a cause over which he has jurisdiction. He is presumed to be fallible; else why provide, not only that he shall correct his own errors by a power to grant new trials, but, also, that they shall be corrected by others, by organizing Courts of Review. The presumption demands diligence to know, and diligence to apply the law—patience and painstaking to master the facts of the case, and to ascertain upon what principles the right between the parties depends. With all the aid that counsel can give him, and without aid from counsel, he is bound to labor to ascertain truth—the truth of the law.

▰ Continuing recognition of the presumption has important implications for appellate review as well. "[T]he most fundamental principle of appellate review [ ] is that the action of a trial court is presumed to have been correct and the

burden of rebutting that presumption is on the party claiming error first to allege some error and then to persuade us that that error occurred." *Fisher v. State*, 128 Md.App. 79, 104–105, 736 A.2d 1125, 1138–39 (1999). See *Hebb*, 31 Md.App. at 499–500, 356 A.2d at 587–88. Though prejudice occasionally may be presumed, error is never presumed by a reviewing court, and we shall not draw negative inferences from this silent record. As we pointed out in *Bradley v. Hazard Technology Co.*, 340 Md. 202, 206, 665 A.2d 1050, 1052 (1995):

It is well-settled that, on appeal, the burden of establishing error in the lower court rests squarely on the appellant. *Wooddy v. Mudd*, 258 Md. 234, 237, 265 A.2d 458, 460 (1970)(quoting *Rippon v. Mercantile Safe Dep.*, 213 Md. 215, 222, 131 A.2d 695, 698 (1957)). This rule reflects a general presumption of regularity in the proceedings below. See *Hagerstown Trust Co., Ex. of Mealy*, 119 Md. 224, 230, 86 A. 982, 984 (1913)("The presumption is that the ruling of the lower Court was correct, until the contrary appears."). Unless an appellant can demonstrate that a prejudicial error occurred below, reversal is not warranted. See *Wooddy*, 258 Md. at 237, 265 A.2d at 460.

Chaney fails to provide us with any evidence sufficient to rebut this presumption. There is nothing in the record to negate the presumption that the sentencing judge knew and properly applied the law. He did not misstate the law. In fact, as both we and the intermediate appellate court agree, he correctly stated that the only sentence available under Art 27, § 413 and *Bartholomey* was life imprisonment under these facts. The *Wooten* decision, clarifying that life sentences were subject to possible subsequent suspension, was decided *two years prior* to Chaney's conviction. Nothing has been presented that rebuts the presumption that the sentencing judge was aware of that decision.

This is not a case like *Williamson*, where the trial judge expressly refused to follow established precedent allowing for the suspension of sentence. Nor is it a case where the trial judge "failed to conduct his own inquiry and to reach his own sentence based upon the evidence before him," as was the case

in *Sanders.* The presumption is that he did so, and there is nothing in this record to suggest otherwise.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED; CASE REMANDED TO THAT COURT WITH DIRECTIONS TO AFFIRM THE JUDGMENT OF THE CIRCUIT COURT FOR CALVERT COUNTY; ALL COSTS IN THIS COURT AND THE COURT OF SPECIAL APPEALS TO BE PAID BY RESPONDENT.**